Matthew D. Schelkopf (*pro hac vice*)
mds@sauderschelkopf.com
Joseph B. Kenney (*pro hac vice*)
jbk@sstriallawyers.com
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
Facsimile: (610) 421-1326

Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

*Attorneys for Plaintiffs and the Putative Class*
*(Additional counsel listed on signature page.)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVY CHO, BRYAN ROTHMALER, BETH MAKIE, ANNA CHMURA, ANTHONY BANDERAS, MICHELLE SMITH, CATHERINE LITTLE, LUTICIA THOMPSON, and THOMAS THOMPSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>HYUNDAI MOTOR COMPANY, LTD. and HYUNDAI MOTOR AMERICA, INC., KIA AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>Defendants. | Case No.: 8:22-cv-0448-SPG-KESx<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Date:   October 12, 2022<br>Time:   1:30 p.m.<br><br>Hon. Sherilyn Peace Garnett |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................ 1

II.   FACTUAL BACKGROUND .............................................. 2

   A. The Oil Consumption Defect ........................................ 2

   B. Defendants' Knowledge of the Defect
     in the Class Vehicles ................................................... 3

   C. Plaintiffs' Experiences with Their Class Vehicles ........... 4

III.  LEGAL STANDARD ...................................................... 4

IV.   ARGUMENT ................................................................ 5

   A. The Fraud Claims Are Properly Pled ........................... 5

     1. Plaintiffs Satisfy Rule 9(b) ................................... 5

        i.    Plaintiffs' omissions claims are adequately
          alleged .................................................... 5

        ii.   Plaintiffs allege pre-sale knowledge ............... 9

     2. The Kentucky and Wisconsin Claims Should Not Be
       Dismissed .......................................................... 12

     3. The Economic Loss Doctrine Does Not Bar Plaintiffs'
       Claims .............................................................. 14

   B. Plaintiffs' Unjust Enrichment Claim is Properly
     Pled in the Alternative ................................................ 15

   C. Plaintiffs' Express Warranty Claims Should Not
     Be Dismissed ........................................................... 16

     1. Plaintiffs Allege the Terms of the Warranty
       and Reliance ...................................................... 16

     2. Plaintiff Little Presented her Class Vehicle Within
       the Warranty ...................................................... 18

   D. Plaintiff's Implied Warranty Claims Should Not
     Be Dismissed ........................................................... 19

     1. Privity Does Not Bar Plaintiffs' claims ................... 19

     2. The Class Vehicles Are Unmerchantable ................. 21

   E. The Magnuson-Moss Warranty Act Claims Are
     Properly Pled ........................................................... 22

   F. Plaintiffs Can Represent All Class Vehicle Purchasers
     and Lessees .............................................................. 22

V.    CONCLUSION .............................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## TABLE OF AUTHORITIES

*Afzal v. BMW of N. Am., LLC*
    2017 WL 3207232, at *6 (D.N.J. July 27, 2017)........................................ 12

*Arabian v. Organic Candy Factory*
    2018 WL 1406608, at *8 (C.D. Cal. Mar. 19, 2018)................................. 14

*Armstrong v. Davis*
    275 F.3d 849, 867 (9th Cir. 2001) ............................................................ 23

*Ashcroft v. Iqbal*
    556 U.S. 662, 678, 129 S.Ct. 1937, L.Ed.2d 868 (2009)......................... 4

*Astiana v. Dreyer's Grand Ice Cream, Inc.*
    2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) .............................. 22

*Bales v. FCA US LLC*
    2019 WL 6219750, at *3 (N.D. Cal. Nov. 21, 2019). ............................... 15

*Baranco v. Ford Motor Co.*
    294 F. Supp. 3d 950, 967-68 (N.D. Cal. 2018)............................................ 6

*Becerra v. GM LLC*
    241 F.Supp.3d 1094, 1117 (S.D. Cal. 2017).............................................. 16

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 555 (2007)............................................................................ 4

*Brown v. Hain Celestial Grp., Inc.*
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ...................................................... 23

*Browning v. Am. Honda Motor Co.*
    20-cv-05417-BLF (N.D. Cal. Mar. 18, 2022)............................................ 7

*Carrillo v. BMW of N. Am. LLC*
    *2020 WL 12028895, *7(C.D. Cal. June 8, 2020)* ................................... 14

*Claridge v. I-Flow Corp.*
    Case No.: 2:18-cv-01654-GMN-BNW (D. Nev. Aug. 30, 2019) ............ 20

*Cty. of Orange v. Tata Consultancy Servs. Ltd.*
    2016 WL 6542728, at *7 (C.D. Cal. Apr. 1, 2016) .................................. 14

*Erlich v. Menezes*
  21 Cal. 4th 543, 552 (1999) ........................................................... 14

*Christensen v. TDS Metrocom LLC*
  2009 WI App 21, ¶ 11 n.4, 316 Wis. 2d 356, 763 N.W.2d 248). ............. 13

*Cirulli v. Hyundai Motor Co.*
  2009 WL 5788762 (C.D. Cal. June 12, 2009) ........................................ 11

*Comwest, Inc. v. American Operator Services, Inc.*
  765 F. Supp. 1467, 1471 (C.D. Cal. 1991) .......................................... 9

*Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*
  2012 WL 1044311(D. Nev. Mar. 27, 2012) ......................................... 19

*Corder v. Ethicon, Inc.*
  473 F. Supp. 3d 749, 768 (E.D. Ky. 2020) ......................................... 13

*Davidson v. Apple, Inc.*, No. 16-4942-LHK
  2018 WL 2325426, at *9 (N.D. Cal. May 8, 2018) ................................ 23

*Elward v. Electrolux Home Prods., Inc.*
  214 F. Supp. 3d 701 (N.D. Ill. 2016) ................................................ 19

*Falco v. Nissan North America, Inc.*
  No. 13-00686, 2013 U.S. Dist. LEXIS 147060 (C.D. Cal. Oct 10, 2013) ... 21

*Garcia v. Gen. Motors LLC*
  2019 WL 247227, at *5 (C.D. Cal. Jan. 17, 2019) ................................ 14

*General Telephone Company of the Southwest v. Falcon*
  457 U.S. 147, 159 n.15 (1982) ......................................................... 25

*Goldstein v. Gen. Motors LLC*
  517 F. Supp. 3d 1076, 1087 (S.D. Cal. 2021) ..................................... 7

*Gratz v. Bollinger*
  539 U.S. 244 (2003) ............................................................... 24, 25

*Hamm v. Mercedes-Benz USA, LLC*
  2017 WL 4168573, at *2 (N.D. Cal. Sept. 20, 2017) ............................ 23

*Hastings v. Ford Motor Co.*
  2020 WL 12688367, at *5 (S.D. Cal. Oct. 2, 2020) ............................. 14

*iv*

*Hiles Co. v. Johnston Pump Co.*
     93 Nev. 73, 79, 560 P.2d 154, 157 (1977) .................................................. 20

*In re GM LLC Ignition Switch Litig.*
     257 F. Supp. 3d 372 (S.D.N.Y. 2017) ......................................... 14

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*
     2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019) ................................ 14

*In re MyFord Touch Consumer Litig.*
     46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................... 10

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*
     No. 20-cv-00337-EMC, at *48 (N.D. Cal. Apr. 9, 2021) ........................ 13

*In re Vizio, Inc., Consumer Priv. Litig.*
     *238 F. Supp. 3d 1204 (C.D. Cal. 2017)* ................................... 24,25

*Johnson v. Glock, Inc.*
     2021 WL 6804234, at *10 (N.D. Cal. Sept. 22, 2021) ........................... 14

*Lanovaz v. Twinings N. Am., Inc.*
     *2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013)* ............................ 25

*Lessin v. Ford Motor Co.*
     Case No. 3:19-cv-01082-AJB-AHG, at *21 (S.D. Cal. Nov. 5, 2020) ..... 12

*Lohr v. Nissan N. Am., Inc.*
     2017 WL 1037555, at *4 (W.D. Wash. Mar. 17, 2017) ......................... 22

*Long v. Flanigan Warehouse Co.*
     79 Nev. 241 (Nev. 1963) ...................................................... 20

*Lopez v. Smith*
     203 F.3d 1122, 1130 (9th Cir. 2000) .......................................... 25

*MacDonald v. Ford Motor Co.*
     37 F. Supp. 3d 1087, 1096 (N.D. Cal. Mar. 31, 2014) ........................ 5,12

*Matanky v. Gen. Motors LLC*
     370 F. Supp. 3d 772, 787 (E.D. Mich. 2019) ................................. 21

*McCarthy v. Toyota Motor Corp.*
     2019 WL 3220579 at *4 (C.D. Cal. Apr. 9, 2019) ............................. 19

*Mui Ho v. Toyota Motor Corp.*

    931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) ................................................... 8

*Marolda v. Symantec Corp.*

    672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) ............................................... 6

*Moss v. U.S. Secret Serv.*

    572 F.3d 962, 969 (9th Cir. 2009) ............................................................... 4

*Murillo v. Kohl's Corp.*

    197 F. Supp. 3d 1119, 1127 (E.D. Wis. 2016) ......................................... 13

*Myers v. BMW of N. Am., LLC*

    2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016) ................................. 11

*Naiser v. Unilever United States, Inc.*

    975 F. Supp. 2d 727, 743 (W.D. Ky. 2013) .............................................. 13

*Parrish v. Volkswagen Grp. of Am., Inc.*

    463 F. Supp. 3d 1043, 1054 n.8 (C.D. Cal. 2020) .................................... 11

*Pearenteau v. General Motors, LLC*

    2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015) ............................ 6,7,9

*Peckerar v. Gen. Motors, LLC*

    2020 WL 5289919, at *4 (C.D. Cal. May 27, 2020) ................................. 16

*Philips v. Ford*

    2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015) ........................ 6,10,12

*Roberts v. Electrolux Home Prods., Inc.*

    No. CV 12-1644, 2013 WL 7753579, at *5 (C.D. Cal. Mar. 4, 2013) ...... 21

*Robinson Helicopter Co. v. Dana Corp.*

    34 Cal. 4th 979 (2004) .............................................................................. 14

*Rollolazo v. BMW of N. Am., LLC*

    2017 WL 1536456, at *15 (C.D. Cal. Feb. 3, 2017) ................................. 21

*Romero v. HP, Inc.*

    No. 16-CV-05415-LHK (N.D. Cal. Jan. 27, 2017) ................................... 22

*Scherer v. FCA US, LLC*

    2021 WL 4621692, at *5 (S.D. Cal. Oct. 5, 2021) .............................. 14,15

*Skilcraft Sheetmetal v. Kentucky Machinery*
    836 S.W.2d 907, 909 (Ky. Ct. App. 1992) ................................................ 13

*Sloan v. Gen. Motors LLC*
    287 F. Supp. 3d 840, 877 (N.D. Cal. 2018) ..................................... 6,7,11

*Tappana v. Am. Honda Motor Co.*
    2022 WL 2526971, at *9 (C.D. Cal. July 5, 2022) .................................... 16

*Uebelacker v. Paula Allen Hldgs., Inc.*
    464 F. Supp. 2d 791, 804 (W.D. Wis. 2006) ........................................... 14

*Vacation Village v. Hitachi America*
    110 Nev. 481, 485 (Nev. 1994) ............................................................. 20

*Velasco v. Chrysler Grp. LLC*
    2014 WL 4187796, at *5 (C.D. Cal. Aug. 22, 2014) .................................. 5

*Von Slomski v. Hain Celestial Grp., Inc.*
    2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) .............................. 24

*Wildin v. FCA US LLC*
    2018 WL 3032986, at *5 (S.D. Cal. June 19, 2018) ................................ 10

*Williams v. Yamaha Motor Co.*
    851 F.3d 1015, 1027-8 (9th Cir. 2017) ...................................................... 11

*Wool v. Tandem Computers Inc.*
    818 F.2d 1433, 1439 (9th Cir. 1987) ........................................................... 9

*Zakikhan v. Hyundai Motor Co.*
    2021 WL 4805454 (C.D. Cal. June 28, 2021) ......................................... 24

## I.    **INTRODUCTION**

After purchasing or leasing their Hyundai or Kia vehicles, the Plaintiffs all experienced a defect that causes their vehicles to consume engine oil. Excessive engine oil consumption occurs when oil bypasses the piston rings in the engine, which allows it to enter the combustion chamber of the engine, causing it to be burned off during the combustion cycle. Engine oil consumption presents a safety risk, as low engine oil levels can lead to engine stalling and catastrophic engine failure. Oil consumption also causes premature wear on the engine, and as Plaintiff Banderas encountered, can cause an engine fire. Defendants routinely deny warranty coverage for repairs related to the defect, including denying Plaintiff Banderas warranty coverage shortly before the engine fire occurred.

Hyundai and Kia knew of the dangerous safety defect before they sold the Class Vehicles. Plaintiffs allege Defendants obtained this knowledge through a variety of sources, including through communications with the National Highway Traffic Safety Administration ("NHTSA"), previous recalls, technical service bulletins ("TSBs") issued directly to their authorized dealers, complaints posted on the internet, and internal testing. Despite their knowledge, Defendants concealed the defect at the point of sale, even though it created an obvious safety risk.

In moving to dismiss, Hyundai and Kia draw inferences in their favor, fail to construe Plaintiffs' allegations as a whole, and otherwise misread Plaintiffs' allegations to frame their arguments. For example, ignoring that other courts have found far less NHTSA complaints to evidence knowledge, they argue that the nearly 200 complaints included in the Complaint are not statistically significant. In arguing that Plaintiffs cannot represent all Class Vehicles, they ignore that Plaintiffs allege the same defect is present in all Class Vehicles, and that most courts hold that such an inquiry should be left to class certification after discovery.

The remaining arguments for dismissal are legally flawed, and Defendants' motion should be denied.[1]

## II.   FACTUAL BACKGROUND

### A.   The Oil Consumption Defect

This putative class action case relates to Class Vehicles[2] manufactured by Defendants Hyundai Motor America and Kia America, Inc. (collectively, "Defendants"). The Class Vehicles contain combustion engines with four pistons that convert the pressure created by the combustion of gasoline mixed with air into a rotating motion. ¶ 155. Engine oil is used to lubricate the piston, piston rings, and cylinder wall as the piston moves up and down. ¶ 156. If there is insufficient engine oil, the engine will not have the necessary lubrication or cooling, which in turn causes the premature wear of internal parts, inadequate performance, oil sludge, and catastrophic engine failure. *Id.* The top sidewall of each piston contains flexible metal rings that, when correctly sized and tensioned, prevent engine oil from entering the combustion chamber. ¶ 157.

---

[1] In addition to Plaintiff Cho's claims under California law (ECF No. 42), Plaintiffs give notice that they are voluntarily conceding the following claims at this time: Plaintiff Makie's Massachusetts Consumer Protection Act Claim, the Thompson Plaintiffs' implied warranty claims under Kentucky law, Plaintiff Chmura's implied warranty claims under Wisconsin law, and the negligent misrepresentation claims.

[2] The Class Vehicles refer to model year ("MY") 2012-2020 Hyundai Elantra; MY 2009–2018 Hyundai Genesis Coupe; MY 2019-2021 Hyundai Kona; MY 2020-2021 Hyundai Palisade; MY 2010-2012 and 2015-2021 Hyundai Santa Fe; 2009-2010 and 2015-2021 Hyundai Sonata; MY 2011–2021 Hyundai Sonata Hybrid; MY 2010-2013 and 2015-2021 Hyundai Tucson; MY 2011-2021 Hyundai Veloster; MY 2020-2021 Hyundai Venue2; MY 2010–2021 Kia Forte; MY 2017-2020 Kia Niro; MY 2011–2020 Kia Optima and Optima Hybrid; MY 2012–2021 Kia Rio; MY 2011–2020 Kia Sorento; MY 2012–2021 Kia Soul; MY 2011–2020 Kia Sportage; MY 2018-2021 Kia Stinger; and MY 2022 Kia K5

The Class Vehicles' engines suffer from a defect that allows engine oil to bypass the piston rings and enter the combustion chamber, where it is burned off during the combustion cycle. ¶ 163. This reduces the engine oil available to lubricate the engine, which causes the premature wear of the engine. ¶ 164. The defect also causes damage to key emission-related components in the exhaust system when the engine oil is burned off. *Id.* The premature wear of the engine is a serious safety issue,[3] as it can cause stalling and catastrophic engine failure, and in the case of Plaintiff Banderas, an engine fire while he was operating his Class Vehicle. ¶ 77. As detailed further in Section IV(I)(A)(2), Plaintiffs allege that Defendants had knowledge of the defect, but concealed it at the point of sale.

**B.    Defendants' Knowledge of the Defect in the Class Vehicles**

Plaintiffs allege that Defendants' knowledge of the oil consumption defect dates back to at least 2012, when consumers began submitting complaints to NHTSA regarding engine oil consumption. ¶¶ 198-99. These complaints significantly pre-date Plaintiffs' purchases, which occurred between 2018 and 2020. ¶¶ 45, 58, 70, 83, 98, 107. Plaintiffs also included a 250-page *sampling* of NHTSA complaints regarding oil consumption. Compl., pp. 40-303. In addition, Defendants issued two TSBs related to oil consumption. The procedure recommended in the TSBs instructs dealers to remove deposits on the piston rings and cylinders. ¶¶ 183-196. This "cleaning" instruction is consistent with Plaintiffs'

---

[3] The less oil available in an engine, the more likely a safety issue such as stalling or an engine fire will occur.  In the TSBs issued by both Kia (TSB 222) and Hyundai (TSB 21-EM-003H), Defendants state that oil consumption of up to 1 quart per 1,000 miles is acceptable. However, the Class Vehicles referenced in the TSBs have capacities between 3.8 and 5.1 quarts of oil. This means that during the Defendants' average factory recommended oil change interval of 7,500 miles, the Class Vehicles' engines can consume the entire amount of engine oil at these "acceptable" rates. As stated above, if the Class Vehicles run low on engine oil, or run out of engine oil entirely, they can experience catastrophic engine failure.

allegations that engine oil is improperly bypassing the piston rings and entering the combustion chamber, where it burns off and leaves a residue. ¶¶ 7, 162. Finally, Plaintiffs allege that Defendants were alerted to the defect through pre-production testing, quality control audits, and service requests, which all buttress their other allegations of pre-sale knowledge. ¶¶ 208-212.

### C.   Plaintiffs' Experiences with Their Class Vehicles

Plaintiffs purchased or leased a Class Vehicle. ¶¶ 32, 45, 58, 70, 83, 98, 107. Each Plaintiff experienced the defect. ¶¶ 34-40, 47-53, 60-65, 72-78, 84-94, 99-103, 108-109. Plaintiff Banderas experienced an engine fire shortly after he was denied warranty repairs. ¶ 77. Plaintiff Chmura experienced engine failure while operating her Class Vehicle on a highway. ¶ 60. Had Defendants disclosed the defect, the Plaintiffs would not have purchased their Class Vehicles, or would have paid less for them. ¶ 16.

## III.   LEGAL STANDARD

On a motion to dismiss, the Court must accept Plaintiffs' "well-pleaded factual allegations" as true and draw all reasonable inferences in the Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While the complaint need not contain "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

///

///

4

IV.   **ARGUMENT**

    **A.**    **The Fraud Claims Are Properly Pled**

        **1.**    **Plaintiffs Satisfy Rule 9(b)**

Plaintiffs allege omission-based[4] statutory fraud claims under the Nevada Deceptive Trade Practices Act, Wisconsin Deceptive Trade Practices Act, Florida Deceptive and Unfair Trade Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, and the Kentucky Consumer Protection Act. Numerous courts within the Ninth Circuit have summarized the essential elements for omissions claims to pass muster under Rule 9(b) as follows:

> Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles.

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. Mar. 31, 2014); *see also Velasco v. Chrysler Grp. LLC*, No. CV 13–08080 DDP VBKX, 2014 WL 4187796, at *5 (C.D. Cal. Aug. 22, 2014) (similar).

Here, the "who" is Defendants. ¶ 2. The "what" is the excessive engine oil consumption defect. ¶¶ 2-3, 163. The "when" is from the time of the sale of the first Class Vehicle to the present day. ¶¶ 178-212. The "where" is the various channels through which Defendants sold their vehicles. ¶¶ 23, 32, 45, 58, 70, 83, 98, 107. Accordingly, Plaintiffs have satisfied Rule 9(b).

        ***i.***  ***Plaintiffs' omissions claims are adequately alleged.***

---

[4] Plaintiffs do not allege, and thus concede, any misrepresentation-based fraud claims.

Despite complying with the 9(b) standard, Defendants argue that Plaintiffs do not adequately allege their exposure to Defendants' omissions. Mot. at 11-12.[5] This is not true. Plaintiffs allege that Defendants could have, but failed to, disclose the defect through their websites, their marketing and promotional materials at the dealerships, through their sales representatives, and through the vehicle's Monroney sticker.[6] *See, e.g.*, ¶¶ 33, 46, 59, 71.

Similar factual allegations have repeatedly been found sufficient. *See, e.g.*, *Philips v. Ford*, 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015) (finding plaintiffs had alleged fraudulent omission claim with particularity where "Plaintiffs allege that Ford's 'television advertisements concerning the vehicles,' 'material concerning the Fusion on Ford's website,' 'window sticker[s],' and 'brochure concerning the Fusion' did not include relevant information about the EPAS system and its possible failures"); *Peckerar v. Gen. Motors, LLC*, No. 18-cv-2153-DMG, 2020 WL 5289919, at *4 (C.D. Cal. May 27, 2020) (denying motion to dismiss where plaintiffs alleged "they read the window sticker on the car, read the owner's manual, discussed the braking system with the sales representative who sold the car, and read the sales documents at the dealership without learning that the braking system was defective"); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 967-68 (N.D. Cal. 2018) ("[I]t is highly improbable that [plaintiff] purchased

---

[5] Defendants also rely on *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) but "[v]irtually every court to consider of *Marolda* where there are claims like the instant case—alleged omission regarding a material safety defect in a vehicle—has rejected its applicability." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 877 (N.D. Cal. 2018) (collecting cases).

[6] To the extent that "contact with the Defendant (as distinct from the dealer)" is required, the contents of the Monroney stickers were developed by Defendants. *Pearenteau v. General Motors, LLC*, No. 2:14-cv-04961-RGK-MAN, 2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015); ¶118.

her vehicle from a dealership without any exchange of information whatsoever (or at least an opportunity for such an exchange.)").

As the Ninth Circuit observed in *Daniel v. Ford Motor Co.*, allegations that plaintiffs "received information . . . from Ford's dealerships, which is also where they could obtain certain brochures and booklets about Ford's vehicles" as well as needing "to return to Ford dealerships to perform warranty repairs" were sufficient "to establish a plausible method of disclosure and to establish that they would have been aware of information disclosed using that method." 806 F.3d 1217, 1226-27 (9th Cir. 2015). This has led many courts to find that "the mere fact that [plaintiffs] purchased their vehicles from an authorized dealership supports a plausible inference under *Daniel* that they interacted with a sales agent and would have received the material information during the purchase process." *Sloan*, 287 F. Supp. at 878. Thus, the relevant inquiry "is whether the plaintiff had an *opportunity* to receive and therefore rely on the omitted information." *Id*. at 875.

As established above, Plaintiffs have alleged numerous avenues through which Defendants could have, but failed to, disclose the defect. *See Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1087 (S.D. Cal. 2021) (pleadings of information channels including promotional statements, window Monroney stickers, and interactions with authorized dealerships' salespeople are sufficient); *Browning v. Am. Honda Motor Co*., 20-cv-05417-BLF (N.D. Cal. Mar. 18, 2022) (pleadings of information channels such as vehicle brochures, window stickers, and personnel at authorized dealerships are sufficient).

Defendants rely on two cases, neither of which are analogous to the facts alleged here. In *Garcia v. Gen. Motors LLC*, the court observed that the plaintiff must "describe the content of the omission and where the omitted information should or could have been revealed." No. 1:18-cv-01313-LJO, 2019 WL 1209632, at *7 (E.D. Cal. Mar. 14, 2019). The same is true of *Parenteau v. Gen. Motors,*

*LLC*, No. CV 14-04961-RGK MANX, 2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015). In both cases, the plaintiffs failed to allege any avenues through which the defendant could have disclosed the defect. *Id.* (stating plaintiff only alleged he "was exposed to various types of information"); *Garcia*, 2019 WL 1209632, at *8 (finding plaintiff alleged no pre-sale disclosures and distinguishing cases where plaintiff interacted with "sales representatives at authorized Ford dealerships").

Defendants further argue that Plaintiffs have not alleged "affirmative acts of concealment." Mot. at 12. Active concealment claims "are essentially the same elements of a fraud by omission claim." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013). In *Mui Ho*, the court found active concealment where the plaintiff alleged the defect was material, the defendant had a duty to disclose it, intent to conceal was demonstrated by consumer complaints and decisions to repair the defective part temporarily or replace them with other defective parts. *Id.* Here, when the vehicles were presented to authorized dealerships with excessive oil consumption, Defendants "advis[ed] customers that the excessive oil consumption is normal and that oil should be added to the engine on a regular basis between oil change intervals" and "add[ed] significant amounts of engine oil, sometimes exceeding the recommended fill level." ¶¶ 216, 225. Defendants *denied* warranty repairs when the Plaintiffs presented their Class Vehicles exhibiting the defect, and Plaintiff Banderas experienced an engine fire shortly after he was denied warranty repairs. ¶ 77. By denying the existence of a problem until the vehicle is out of warranty, Defendants have "refused to acknowledge the defect to vehicle owners" and "have affirmatively taken steps to conceal the defect." ¶ 230.

The cases that Defendants rely on are distinguishable. In *Garcia*, the plaintiffs alleged "GM 'attempted to suppress public recognition of the [defect] by propagating the falsehood that the excessive oil consumption ... was normal,' but

offer[ed] no specific facts regarding either the suppression itself, or the details of the alleged propagation of the falsehood." No. 18-cv-01313-LJO, 2019 WL 1209632, at *9 (E.D. Cal. Mar. 14, 2019). Similarly, in *Taragan v. Nissan N. Am., Inc.*, the court found that "plaintiffs offer nothing more than 'conclusory' allegations that Nissan 'actively concealed' the defect." No. 09-cv-3360-SBA, 2013 WL 3157918, at *7 (N.D. Cal. 2013). Plaintiffs have alleged specific acts of active concealment, and thus *Garcia* and *Taragan* are inapposite.

### ii.   *Plaintiffs allege pre-sale knowledge*

Defendants argue that Plaintiffs have failed to allege Defendants had knowledge of the defect at the time Plaintiffs purchased their Class Vehicles. Mot. at 13. In support, Defendants concede that Plaintiffs do allege pre-sale knowledge, but assert that they "provide few supporting factual allegations." *Id.* at 14. Because Defendants' argument misconstrues Plaintiffs' allegations, it should be rejected.

As an initial matter, "[w]hile circumstances constituting fraud must be alleged with particularity, knowledge may be alleged generally." *McCarthy v. Toyota Motor Corp.*, No. 8:18-CV-00201-JLS- KES, 2019 WL 3220579, at *4 (C.D. Cal. Apr. 9, 2019) (analyzing whether plaintiff adequately pleaded pre-sale knowledge of a defect); *Parenteau v. Gen. Motors, LLC*, No. CV 14-04961-RGK MANX, 2015 WL 1020499, at *6 (C.D. Cal. Mar. 5, 2015) (same). While allegations pled upon information and belief typically do not satisfy Rule 9(b), such allegations may suffice if facts constituting the alleged fraud are peculiarly within the defendant's knowledge and the pleading includes a statement of facts upon which the allegations are founded. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Comwest, Inc. v. American Operator Services, Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991). Indeed, "in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Wool*, 818 F.2d at 439.

Consumers began complaining to NHTSA about the engine defect as early as **2012**. ¶ 198, 199 (p. 134, l. 3-18 (May 2012); p. 134, l. 20-135, l. 7 (October 2012); p. 142, l. 24-143 l. 17 (September 2012); p. 293, l. 4-21 (December 2012).) These complaints predate Plaintiffs' purchases. ¶ 32 (Rothmaler, 2019); ¶ 45 (Makie, 2018); ¶ 58 (Chmura, 2018); ¶ 70 (Banderas, 2020); ¶ 83 (Smith, 2020); ¶ 98 (Little, 2017); ¶ 107 (Thompson, 2018). As consumer complaints to NHTSA continued to mount year after year, Defendants were forced to issue a recall and two internal technical service bulletins ("TSB") to their authorized dealerships regarding the defect in the Class Vehicles. ¶¶ 179-182 (Hyundai's Recall 203, June 2021); 185 (TSB 222, December 2020), 192 (TSB 21-EM-003H, March 2021).

Defendants attempt to downplay their level of knowledge by arguing "*neither* oil consumption TSB addresses the purported defect." Mot. at 28. The TSBs, however, each require combustion chamber cleaning and instructs dealers to remove deposits on the piston rings and cylinders. ¶¶ 183-196. This "cleaning" is consistent with Plaintiffs' allegations that engine oil is improperly bypassing the piston rings and entering the combustion chamber, where it leaves a residue. ¶¶ 7, 162. Moreover, it is well established that TSBs and recalls "were proceeded by an accretion of knowledge by [defendant]." *Philips*, 2015 WL 4111448, at *9 (finding a plausible claim of pre-purchase knowledge in January 2010 when the defendant issued its first TSB in May 2011); *Wildin v. FCA US LLC*, No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986, at *5 (S.D. Cal. June 19, 2018) (same); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (same).

Defendants claim that the numerous complaints made to NHTSA regarding oil consumption are insufficient to establish knowledge. Defendants erroneously state that "plaintiffs contend that there have been only 194 [NHTSA] complaints over a 10-year period," and conclude that "[g]iven that plaintiffs contend that Hyundai sells 700,000 vehicles in the United States every year, that number of

NHTSA complaints is far from a statistically significant percentage." Mot. at 14 (internal citation omitted). Defendants' argument regarding purported percentages of complaints overlooks that Plaintiffs' *250-page sampling* of NHTSA complaints is not exhaustive, nor does it purport to be. In fact, the complaints are so numerous as to make an exhaustive listing impracticable and a complaint containing them unwieldy.[7]

An "unusually high" number of complaints can suffice to establish presale knowledge of a defect. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027-8 (9th Cir. 2017); *Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762 (C.D. Cal. June 12, 2009). While the NHTSA complaints do not identify a defect, "[i]t is hardly surprising that a lay person's complaint would not 'explicitly state[ ]' the technical cause of the issues he or she is having with his or her car. That simply cannot be the standard of what is required to allege pre-sale knowledge." *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1054 n.8 (C.D. Cal. 2020) (quoting *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017). Moreover, Defendants have a legal obligation to monitor NHTSA complaints. ¶ 200; *see also Id.* at 1054 (allegations that defendant tracked NHTSA complaints sufficient); *Myers v. BMW of N. Am., LLC*, No. 16-CV-00412-WHO, 2016 WL 5897740, at *4 (N.D. Cal. Oct. 11, 2016) (same).

Defendants also argue that the recall and TSBs are inconclusive because they deal with different vehicles or engines, or were issued after Plaintiffs purchased their vehicles. Mot. at 15. Plaintiffs' allegations that pre-production testing, quality control audits, and early complaints and service requests are similarly dismissed by Defendants. ¶¶ 10, 208-212, 400; Mot. at 15. Nonetheless,

---

[7] If the Court finds it helpful in ruling on Defendants' motion, Plaintiffs can provide a supplemental submission including additional complaints.

together with the NHTSA complaints, these allegations establish Defendants'
knowledge of the defect. *Lessin v. Ford Motor Co.*, Case No.: 3:19-cv-01082-AJB-
AHG, at *21 (S.D. Cal. Nov. 5, 2020) ("Plaintiffs do not rest their theory
of knowledge on just the NHTSA complaints alone. In addition to
the NHTSA complaints, Plaintiffs point to (1) Ford's own records of customers'
complaints, (2) dealership repair records, (3) warranty and post-warranty claims,
and (4) pre-sale durability testing and part sales as grounds to infer knowledge.");
*Philips v. Ford Motor Co*., No. 14-CV-02989-LHK, 2015 WL 4111448, at
*10 (N.D. Cal. July 7, 2015) ("Here, California Plaintiffs' allegations, which
include internal testing, dated internal communications, dated customer
complaints, and dated TSBs, are sufficient to plausibly allege that Ford
had knowledge of the EPAS system defect at the time California Plaintiffs
purchased their vehicles."); *MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087,
1093 (N.D. Cal. 2014) (identifying "a number of facts" that support
plaintiffs' knowledge allegations, including internal data, NHTSA complaints, and
TSBs). *See also Afzal v. BMW of N. Am., LLC*, No. 2:15-cv-08009, 2017 WL
3207232, at *6 (D.N.J. July 27, 2017) (pre-sale knowledge satisfied where
plaintiffs alleged BMW introduced a defective engine in 2005 and then
incorporated the same defective engine specifications in the class vehicles, but
failed to disclose the defect prior to the plaintiffs' purchases in 2013 and 2014).

At this early stage, without the benefit of any discovery, Plaintiffs have
plausibly alleged Defendants' knowledge of the defect.

**2.      The Kentucky and Wisconsin Claims Should Not Be Dismissed**

<u>KCPA</u>. While the Kentucky Consumer Protection Act requires vertical
privity between a plaintiff and defendant, "Kentucky appellate courts have
implied—and, more importantly, the Kentucky Supreme Court has not rejected—
an exception for a warranty made 'for the benefit of the subsequent

1  purchaser.'" *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 768 (E.D. Ky. 2020);

2  *see also Naiser v. Unilever United States, Inc.*, 975 F. Supp. 2d 727, 743 (W.D.

3  Ky. 2013) (denying motion to dismiss KCPA claim due to warranty made for

4  plaintiff's benefit); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, No. 20-cv-00337-

5  EMC, at *48 (N.D. Cal. Apr. 9, 2021) ("In a sense, the warranty provides privity

6  between the parties. … Absent clear caselaw to the contrary, the Court at this

7  juncture will not dismiss the Kentucky Plaintiffs' consumer protection claim on the

8  basis of a lack of privity.").[8]

9      Because the Thompson plaintiffs are intended beneficiaries of the warranty

10 provided by Kia (¶¶ 221-22), the privity requirement does not bar their claims.

11     WDTPA. Defendants argue that the Wisconsin Deceptive Trade Practices

12 Act provides does not provide a cause of action for omissions or concealment.

13 Mot. at 16. Omissions are not actionable, but "a nondisclosure of facts, combined

14 with an affirmative representation that is undermined by the non–disclosed facts"

15 establishes liability under § 100.18. *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119,

16 1127 (E.D. Wis. 2016) (quoting *Christensen v. TDS Metrocom LLC*, 2009 WI App

17 21, ¶ 11 n.4, 316 Wis. 2d 356, 763 N.W.2d 248). Thus, "concealment–related"

18 averments are relevant and do not prevent Plaintiffs from "bringing

19 misrepresentation–based claims." *In re GM LLC Ignition Switch Litig.*, 257 F.

20 Supp. 3d 372, 456-57 (S.D.N.Y. 2017) (construing § 100.18 claim).

21     Here, Defendants led Plaintiffs to believe that Defendants placed an

22 emphasis on their vehicles' "high quality, dependability and reliability." ¶ 144.

23 Defendants' advertising, when compared against what they knew but concealed,

---

[8] *See also Skilcraft Sheetmetal v. Kentucky Machinery*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992) (concluding "a subsequent purchaser may not maintain an action against a seller with whom he did not deal or who made no warranty for the benefit of the subsequent purchaser.").

caused Plaintiffs to believe something other than what is true. *Uebelacker v. Paula Allen Hldgs., Inc.*, 464 F. Supp. 2d 791, 804 (W.D. Wis. 2006) ("A statement is untrue if it is false, while a statement is deceptive or misleading 'if it causes a reader or listener to believe something other than what is in fact true or leads to a wrong belief.'")

### 3.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims

Defendants argue that the economic loss doctrine bars Plaintiffs' fraudulent concealment claims. Def. Mot. at 6-7. Yet that rule does not reach tort claims that stem from intentional conduct. *Carrillo v. BMW of N. Am., LLC*, 2020 WL 12028895, *7 (C.D. Cal. June 8, 2020) (citing *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)). Nor does it bar fraud claims where the plaintiff was induced into entering into a contract. *See Cty. of Orange v. Tata Consultancy Servs. Ltd.*, 2016 WL 6542728, at *7 (C.D. Cal. Apr. 1, 2016) (collecting cases); *Arabian v. Organic Candy Factory*, 2018 WL 1406608, at *8 (C.D. Cal. Mar. 19, 2018). The economic loss rule also does not apply to claims for intentional misrepresentation or fraud, including fraudulent omissions. *Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979 (2004); *Johnson v. Glock, Inc.*, 2021 WL 6804234, at *10 (N.D. Cal. Sept. 22, 2021) ("[F]raudulent omissions are materially the same as fraudulent misrepresentations in the ways that mattered to *Robinson…"*); *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig*., 2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019) ("The Court … declines to apply the economic loss rule to the omission claims."); *Hastings v. Ford Motor Co.*, No. 19-cv-02217-BAS-MDD, 2020 WL 12688367, at *5 (S.D. Cal. Oct. 2, 2020) (economic loss rule did not bar fraud-by-omission claim against vehicle manufacturer).

It follows that the rule does not bar fraud claims against automobile manufacturers for failing to disclose a known material defect. *See*, *e.g.*, *Garcia v. Gen. Motors LLC*, 2019 WL 247227, at *5 (C.D. Cal. Jan. 17, 2019); *Scherer v.*

*FCA US, LLC*, No. 3:20-cv-02009-AJB-BLM, 2021 WL 4621692, at *5 (S.D. Cal. Oct. 5, 2021) ("[T]he Court finds the crux of the SAC's fraud allegation is that Defendant fraudulently induced Plaintiffs into the warranty by concealing the transmission and PCM issue."); *Bales v. FCA US LLC*, No. 19-cv-04798-KAW, 2019 WL 6219750, at *3 (N.D. Cal. Nov. 21, 2019).

Fraudulent inducement is a recognized exception to the economic loss doctrine in Illinois, Wisconsin, Florida, Texas and Kentucky.[9] While Massachusetts, and Nevada have not ruled on the issue, those claims have not been clearly rejected.[10] As such, Plaintiffs' common law fraud claims should not be dismissed based on the economic loss doctrine.

### B.     Plaintiffs' Unjust Enrichment Claim is Properly Pled in the Alternative

---

[9] *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 867-68 (Ill. App. Ct. 1993) ("[A] well-recognized exception exists … where the plaintiff is fraudulently induced to enter into the contract in the first place."); *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 283 Wis. 2d 555, 585 (Wis. 2005) ("[A] fraud in the inducement claim is not barred by the economic loss doctrine where the fraud is extraneous to, rather than interwoven with, the contract.") (internal citations omitted); *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1997) ("[F]raud in the inducement is an independent tort and is not barred by the economic loss rule."); *Formosa Plast v. Presidio Engineers*, 960 S.W.2d 41, 47 (Tex. 1998) ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether … the plaintiff only suffers an economic loss related to the subject matter of the contract."); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 687 (E.D. Mich. 2020) (denying motion to dismiss fraudulent concealment claim under Kentucky law because of fraudulent inducement exception to economic loss rule);

[10] *See, e.g.*, *Luxeyard, Inc. v. Kay Holdings, Inc.*, 3:15-cv-0357-LRH-WGC, at *8 (D. Nev. Sep. 15, 2016) ("As such, the Nevada Supreme Court has found that the doctrine does not bar claims of intentional misrepresentation, a tort very similar to fraudulent inducement.") (citing *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1154 n.2 (Nev. 2013)).

Defendants move to dismiss Plaintiffs' unjust enrichment claims[11] and assert that "plaintiffs must establish, at the pleading stage, that they lack an adequate remedy at law, or their claims for equitable relief must be dismissed." Mot. at 17. Defendants, however, have moved to dismiss Plaintiffs' warranty claims. Mot. at 18-20. This is precisely why Fed. R. Civ. P. 8(d) permits plaintiffs "to plead claims in the alternative or in an inconsistent manner, and courts in this Circuit have allowed unjust enrichment and breach of contract claims to proceed simultaneously in one action." *Becerra v. GM LLC*, 241 F.Supp.3d 1094, 1117 (S.D. Cal. 2017) (citing *Longest v. Green Tree Servicing LLC*, 74 F. Supp.3d 1289, 1302 (C.D. Cal. 2015)). It would be premature to determine the adequacy of any potential legal remedies on the pleadings as "discovery may reveal that claims providing legal remedies are inadequate," *Edelson v. Travel Isnrued Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021), and "there is still a question of fact as to whether the legal remedies here provide adequate recovery." *Oddo v. United Techs. Corp.*, 2022 WL 577663, at *19 (C.D. Cal. Jan. 3, 2022).

Accordingly, Plaintiffs' unjust enrichment claims are properly pled in the alternative and should not be dismissed. *Tappana v. Am. Honda Motor Co.*, No. 21-cv-9046-DSF, 2022 WL 2526971, at *9 (C.D. Cal. July 5, 2022) (declining to dismiss unjust enrichment claims pled in the alternative).

### C. Plaintiffs' Express Warranty Claims Should Not Be Dismissed

#### 1. Plaintiffs Allege the Terms of the Warranty and Reliance

Defendants argue that Plaintiffs' warranty claims should be dismissed because they have not alleged the terms of the warranties. Mot. at 19. This is not true, as Plaintiffs allege the salient terms of the relevant warranties: a 10-year/100,000 mile Powertrain Limited Warranty and a 5-year/60,000 mile New

---

[11] Because Plaintiff Davy Cho has been voluntarily dismissed, Defendants' arguments regarding the UCL and FAL are moot.

Vehicle Limited Warranty. ¶¶ 213-214, 222-23. Plaintiffs allege that the Powertrain Warranty covers the "the engine, transmission, and drive systems" and, as such, "is the applicable warranty related to the Oil Consumption Defect." ¶¶ 214, 223. Accordingly, Plaintiffs have alleged the terms of the relevant warranties, the parts covered by the warranty, and why the alleged defect is covered by the warranty. Defendants, who drafted the warranties, fail to specify what other "specific warranty terms" are allegedly relevant. Even if they did, Plaintiffs are not required to prospectively address Defendants' potential defenses in their complaint. *See Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1006 (C.D. Cal. 2010) ("Plaintiff thus has no obligation to allege facts related to Gateway's proposed warranty-based defenses.").

Defendants also argue that because Plaintiffs did not receive or review the warranty prior to the sale, they could not have relied on it. An identical argument was rejected in *In re MyFord Touch Consumer Litig.*, where the court held that breach of warranty claims under UCC § 2-313(1)(a) do not require reliance because the UCC establishes a presumption that the warranty becomes part of the basis of the bargain. 46 F. Supp. 3d 936, 972 (N.D. Cal. 2014); *see also Weinstat v. Dentsply International, Inc.*, 180 Cal.App.4th 1213, 1230 (Cal. Ct. App. 2010) ("To accept the manufacturer's argument that in order to be part of the basis of the bargain the warranty must actually be handed over during the negotiation process … is to ignore the practical realities of consumer transactions wherein the warranty card generally comes with the goods, packed in the box of boxed items. … Indeed, such interpretation would, in effect, render almost all consumer warranties an absolute nullity."). This is especially true where, as here, the warranty is written and not verbal. *MyFord Touch*, 46 F. Supp. 3d at 973 ("Where there is an express written warranty, an assertion that the warranty not part of the deal between the issuing party and receiving party is far less persuasive.").

Defendants do not dispute that the Class Vehicles came with the warranties. Moreover, each of the Plaintiffs brought their Class Vehicle in for repairs under the warranty (and were denied warranty repairs), demonstrating their knowledge of, and reliance on, the warranty. ¶¶ 40, 52, 62, 74, 92, 103, 109, 258-59.[12]

### 2. Plaintiff Little Presented her Class Vehicle Within the Warranty

Defendants argue that Plaintiff Little's claim should be dismissed because her engine was not replaced until after the 100,000-mile limit in Hyundai's warranty. Mot., 21. This argument misreads the facts. Plaintiff Little's vehicle stalled three years after she purchased it and while she had 92,983 miles on the odometer – placing it firmly within the 10-year/100,000 mile warranty. ¶ 99. She brought her Class Vehicle in for repairs after it had stalled and before the warranty expired, and after being put through an oil consumption test that resulted in her engine oil levels reading low, she was ultimately (and incorrectly) denied warranty repairs for the issue. ¶ 100. After continuing to experience the same issues, she brought her vehicle back and was then informed the engine needed to be replaced – which conveniently for Defendants would require Plaintiff Little to pay over $10,000, instead of being provided for free under the warranty. ¶ 102.

As numerous courts have observed, "[m]anufacturers are 'not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period. Rather, the question is whether [a plaintiff] sought repairs, refunds or replacements and, if so, whether [the manufacturer] responded appropriately under the warranty.'" *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *9 (C.D. Cal. Nov. 8, 2013); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab.*

---

[12] Should the Court deem it necessary, Plaintiffs respectfully request leave to amend their Complaint to allege explicit reliance on Defendants' warranties.

*Litig.*, 754 F. Supp. 2d 1145, 1178 (C.D. Cal. 2010) ("Plaintiffs who sought repairs pursuant to the recalls or who sought repairs for SUA-related issues have stated a claim for breach of express warranty based on the written warranty.").

Plaintiff Little's experience is emblematic of Plaintiffs' allegations that Defendants denied problems and delayed repairs until after the warranty period had expired, leaving customers with the responsibility for costly repairs, some of which could have been avoided had earlier action been taken. ¶¶ 9-10, 13. Regardless, Plaintiff Little's vehicle manifested the alleged defect, she took the vehicle in during the warranty period, the oil consumption test demonstrated her vehicle was suffering from the defect, and Defendants wrongly denied her warranty claim. ¶ 8 (alleging Defendants routinely deny warranty claims during the warranty period). As such, she has pled a viable express warranty claim.

D.     **Plaintiffs' Implied Warranty Claims Should Not Be Dismissed**

1.     **Privity Does Not Bar Plaintiffs' Claims**

Defendants argue that the implied warranty claims under Illinois, Nevada, and Florida law must be dismissed for lack of privity. Mot. at 21. This privity argument disregards that the Plaintiffs are the intended third-party beneficiaries of Defendants' agreements with its dealerships, and that the "[t]he privity inquiry is fact intensive"—allegations that "remote customers are third-party beneficiaries of contracts" between manufacturers and intermediaries are "sufficient to survive a motion to dismiss." *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016) (recognizing exception under Illinois law); *see also In re AZEK Bldg. Prods., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015) (upholding Florida implied warranty claims and finding that "[t]he fact-intensive nature of privity frequently renders dismissal at the pleading stage premature."); *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*, Case No.: 2:10-cv-00510-GMN-GWF, 2012 WL 1044311, at *3 (D. Nev. Mar. 27,

2012) ("[The defendant] argues that [the plaintiffs'] claim for Breach of Implied Warranty fails because there is no privity of contract between the parties. However, because the Court finds that [the plaintiffs] are a third party beneficiary to the contract this argument fails.").

Additionally, under Illinois law, when a defendant institutes a widespread marketing campaign that reaches consumers, implied warranty claims are not barred. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 806-07 (N.D. Ill. 2016) (privity not required where consumers were targeted with "direct marketing campaign" by manufacturer). Plaintiff Rothmaler viewed advertisements on Hyundai's website, marketing and promotional materials available at the dealership, and spoke with Hyundai sales representatives at the dealership. ¶ 33. There is no question that Hyundai instituted a direct marketing campaign.

In addition, Nevada's Supreme Court has held that "lack of privity between the buyer and manufacturer does not preclude an action against the manufacturer for the recovery of economic losses caused by breach of warranties." *Vacation Village v. Hitachi America*, 110 Nev. 481, 485 (Nev. 1994) (citing *Hiles Co. v. Johnston Pump Co.*, 93 Nev. 73, 79, 560 P.2d 154, 157 (1977); *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 788 (E.D. Mich. 2019) ("Nevada law does not require vertical privity for a breach of implied warranty claim."); *Wood v. Winnebago Indus.*, 18-cv-01710-JCM-BNW, at *3 n.[3] (D. Nev. Nov. 3, 2021) ("While Winnebago was not the 'seller' of the RV, Plaintiff, under Nevada law, can maintain a claim for breach of implied warranty against Winnebago as privity is not a requirement in Nevada.").

Defendants cite *Claridge v. I-Flow Corp.*, Case No.: 2:18-cv-01654-GMN-BNW (D. Nev. Aug. 30, 2019), but *Claridge* based its reasoning on *Long v. Flanigan Warehouse Co.*, 79 Nev. 241 (Nev. 1963). Recently, the Eastern District

of Michigan rejected cases that rely on *Long*, explaining that "*Long* is not applicable – or, at a minimum, is entitled to less weight than *Hiles Co. and Vacation Village* – because: (1) *Hiles Co. and Vacation Village* were decided after, and therefore supersede, *Long* ; (2) *Long* deals with horizontal, not vertical, privity; and (3) *Long* was decided under the Nevada Uniform Sales Act, not the Uniform Commercial Code." *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 787 (E.D. Mich. 2019) (interpreting Nevada law).

In any case, privity is an issue of fact which should not be decided on a motion to dismiss. *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d at 807 (viewing in light most favorable to plaintiffs, allegations sufficient to proceed to discovery on privity issue). Thus, even if the privity requirement exists, Plaintiffs' implied warranty claims should not be dismissed until a more complete factual record is established.[13]

### 2. The Class Vehicles Are Unmerchantable

In addition, safety defects, such as engine stalling and engine failure resulting from excessive oil consumption (¶ 3), render a vehicle unmerchantable, even if they have not yet manifested. *Falco v. Nissan North America, Inc.*, No. 13-00686, 2013 U.S. Dist. LEXIS 147060 at *11 (C.D. Cal. Oct 10, 2013) (implied warranty of merchantability pleaded concerning alleged safety defect); *Roberts v. Electrolux Home Prods., Inc.*, No. CV 12-1644, 2013 WL 7753579, at *5 (C.D. Cal. Mar. 4, 2013) ("[T]his safety defect renders the dryers unfit and unmerchantable…. California courts have rejected the argument that unsafe products retaining some functionality satisfy the implied warranties.").

---

[13] Defendants cite *Rollolazo v. BMW of N. Am., LLC*, No. CV 16-00966 BRO (SSx), 2017 WL 1536456, at *15 (C.D. Cal. Feb. 3, 2017) in support of their privity argument. Notably, however, the court granted plaintiff leave to amend its allegations.

**E.  The Magnuson-Moss Warranty Act Claims Are Properly Pled**

Defendants argue that "Plaintiffs cannot sustain an express or implied warranty claim under the MMWA because they have not provided the required statutory notice." Mot. at 23. Plaintiffs, however, provided notice to Defendants regarding their violations the MMWA on March 18, 2022. ¶¶ 251.

Defendants also argue that because MMWA claims rise and fall with the underlying state law claims, the Court should dismiss them. Mot. at 23. Plaintiffs have already established that their breach of warranty claims are properly pled. *See supra* Sections III-IV. As such, the MMWA claims should not be dismissed either.

**F.  Plaintiffs Can Represent all Class Vehicle Purchasers and Lessees**

Seeking to narrow the class before discovery even begins, Defendants argue that Plaintiffs should not be allowed to represent a class that encompasses all of the Class Vehicles because allegedly "plaintiffs cannot have been injured by representations as to vehicles they did not own." Mot. at 24. Numerous courts have held – both on the pleadings and at class certification – that plaintiffs have standing to represent purchasers of substantially similar products. *See*, *e.g.*, *Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *7 (N.D. Cal. Jan. 27, 2017) (permitting class representatives to represent unnamed class members who have not purchased the same exact product "so long as the products and alleged misrepresentations are substantially similar"); *see also Lohr v. Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 WL 1037555, at *4 (W.D. Wash. Mar. 17, 2017) (holding named plaintiffs may represent class members for models of vehicles they did not own because the models were substantially similar to the model plaintiffs purchased).

The claims and products at issue do not have to be "identical in every respect" to confer standing. *Romero*, 2017 WL 386237 at *8 (collecting cases applying the "Ninth Circuit's admonition that courts 'should not be too rigid in

applying standing requirements to proposed classes'" and the substantial similarity test). In fact, the Ninth Circuit has cautioned that "when determining what constitutes the same type of relief or the same kind of injury, [courts] must be careful not to employ too narrow or technical an approach." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001); *see also Davidson v. Apple, Inc.*, No. 16-4942-LHK, 2018 WL 2325426, at *9 (N.D. Cal. May 8, 2018) ("Plaintiffs have made a strong case as to why the iPhone 6 and iPhone 6 Plus are substantially similar.") *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) ("The majority of the courts … hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar."); *Hamm v. Mercedes-Benz USA, LLC*, 2017 WL 4168573, at *2 (N.D. Cal. Sept. 20, 2017) (plaintiffs had standing because they "alleged that all of the vehicles at issue share the same transmission system.").

Defendants assert that "plaintiffs fail to even attempt to plead substantial similarity or otherwise allege any facts showing group treatment of these vehicles is warranted." Mot. at 24. This is not true. Plaintiffs allege that the common defect across all of the Class Vehicles is a manufacturing defect that causes excessive engine oil consumption. ¶ 2. The Class Vehicles all use pistons with piston rings, which are designed to prevent engine oil from entering the combustion chamber, where it is burned off. ¶ 157. In essence, the defect allows engine oil to pass the piston rings, where it is burned off and reduces the available engine oil over time. ¶ 165. Put another way, the Class Vehicles use the same defective parts, despite the parts being in different engines or different vehicle models, which does not defeat a finding of substantial similarity.

In *Tappana v. Am. Honda Motor Co., Inc.*, Judge Fischer rejected a similar argument that involved "all model year 2015-2022 Honda and Acura vehicles

equipped with a sunroof or moonroof manufactured with tempered glass" and held that because the plaintiffs allege that the relevant part, the sunroofs, utilized the same physical makeup but differed in size, Honda's argument was "more appropriately addressed at the class certification stage of the proceedings." 2022 WL 2526971, at *3. As such, Defendants' motion to dismiss is procedurally premature as Plaintiffs should have an opportunity to take discovery on their allegations. *Id.* (deferring standing question until class certification). *See also Von Slomski v. Hain Celestial Grp., Inc.*, No. SACV131757AGANX,2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) (same); *Sims v. Kia Motors Am., Inc.*, No. SACV131791AGDFMX, 2014 WL 12558249, at *5 (C.D. Cal. Mar. 31, 2014) (same); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("[A]ny concerns . . . about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage.").

Defendants note that some courts have criticized the substantial similarity standard. *See, e.g.*, *Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454, at *6 (C.D. Cal. June 28, 2021). But the majority of courts have determined that this approach—as opposed to the narrow view espoused by Defendants—"most closely accords with" Supreme Court precedent. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017). For instance, in *Vizio* the court explained that a conclusion that a plaintiff can represent only those who purchased exactly the same model "is irreconcilable with the Supreme Court's decision in *Gratz v. Bollinger*, 539 U.S. 244 (2003)." *Id.* at 1218.

In *Gratz*, the Court held that the plaintiff—a transfer applicant—had standing to seek an injunction on behalf of both transfer and freshmen applicants because "the University's use of race in undergraduate transfer admissions *does not implicate a significantly different set of concerns* than does its use of race in undergraduate freshman admissions." 539 U.S. at 265 (emphasis added). The

Court has "thus treated the relatedness of a named plaintiff's claims to those of the class as implicating standing as well as the propriety of class certification," and the substantial similarity approach "most closely accords" with *Gratz* and *Lewis* because its focus is on "whether the plaintiff's averred injury is substantially similar to the claims of those she seeks to represent." *Vizio*, 238 F. Supp. 3d at 1218-19. Similarly, in *General Telephone Company of the Southwest v. Falcon*, the Supreme Court indicated that it might be possible for the employee to challenge procedures also affecting job applicants, or vice versa, if an employer "operated under a general policy of discrimination" that "manifested itself in hiring and promotion practices in the same general fashion . . . ." 457 U.S. 147, 159 n.15 (1982); *see also Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 2285221, at \*2 (N.D. Cal. May 23, 2013) (discussing *Gratz*).

# V.   CONCLUSION

For the reasons set forth above, Defendants' motion should be denied.[14]

Dated: August 31, 2022                    Respectfully submitted,

*/s/ Alison M. Bernal*
Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

*Signatures continued below*

---

[14] Where pleadings are determined to be deficient, leave to amend is liberally granted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). If the Court determines that Plaintiffs' Complaint is in any manner deficient, Plaintiffs respectfully request that they be permitted leave to amend to cure any deficiencies.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Matthew D. Schelkopf (*pro hac vice*)
mds@sstriallawyers.com
Joseph B. Kenney (*pro hac vice*)
jbk@sstriallawyers.com
Sauder Schelkopf LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581

Bonner C. Walsh (*pro hac vice*)
WALSH PLLC
bonner@walshpllc.com
1561 Long Haul Road
Grangeville, ID 83530
Telephone: (541) 359-2827
Facsimile: (866) 503-8206

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Alison M. Bernal, hereby certify that on this 31st day of August, 2022, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.

*/s/ Alison M. Bernal*
Alison M. Bernal