QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
  Christine W. Chen (Bar No. 327581)
  christinechen@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
  Cristina Henriquez (Bar No. 317445)
  cristina.henriquez@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile:  (650) 801 5100

Attorneys for Defendants Hyundai Motor
Company, Ltd., Hyundai Motor America,
Inc., Kia America, Inc., and Kia
Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DAVY CHO, BRYAN ROTHMALER, BETH MAKIE, ANNA CHMURA, ANTHONY BANDERAS, MICHELLE SMITH, CATHERINE LITTLE, LUTICIA THOMPSON, and THOMAS THOMPSON, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  vs.<br><br>HYUNDAI MOTOR COMPANY, LTD., HYUNDAI MOTOR AMERICA, INC., KIA AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>   Defendants. | Case No. 8:22-cv-00448-SPG-KESx<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: October 12, 2022<br>Time: 1:30 p.m.<br><br>The Hon. Sherilyn Peace Garnett<br><br>Trial Date: None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................... 1

ARGUMENT ............................................................................................... 1

I.     PLAINTIFFS' REMAINING FRAUD-BASED CLAIMS UNDER THE NDTPA, WDTPA, FDUTPA, ICFA, AND KCPA FAIL ...................... 1

    A.    Plaintiffs Fail to Allege Pre-Sale Knowledge ................................ 1

    B.    Plaintiffs Cannot Proceed Under an Actionable Omissions Theory ............................................................................................ 3

    C.    The KCPA and WDTPA Claims Are Deficient ..................................... 5

    D.    Plaintiffs Cannot Justify An Exception To The Economic Loss Rule ............................................................................................. 7

II.    PLAINTIFFS' EQUITABLE CLAIMS SHOULD BE DISMISSED ............. 9

III.    PLAINTIFFS' WARRANTY CLAIMS FAIL ............................................. 10

    A.    Plaintiffs Fail to Allege Express Warranty Terms or Reliance ............ 10

    B.    Plaintiff Little Only Needed Repair Outside Warranty Limits ............. 11

    C.    Lack of Privity Bars The Implied Warranty Claims of Plaintiffs Rothmaler, Chmura, Banderas, Smith, and the Thompsons ................. 12

    D.    Plaintiffs Makie, Smith, and the Thompsons Do Not Adequately Allege Their Vehicles are Unfit for Ordinary Use ................................ 14

    E.    Plaintiffs' Magnuson-Moss Warranty Claims Fail ................................ 14

IV.    PLAINTIFFS LACK STANDING FOR VEHICLES NOT PURCHASED ........................................................................................ 15

CONCLUSION ........................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Apodaca v. Whirlpool Corp.*,
   2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ....................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 14

*Bailey v. Monaco Coach Corp.*,
   168 F. App'x 893 (11th Cir. 2006) ..................................................................... 12

*BCC Merch. Sols. Inc. v. Jet Pay, LLC*,
   129 F. Supp. 3d 440 (N.D. Tex. 2015) .................................................................. 9

*Claridge v. I-Flow Corporation*,
   2019 WL 4139433 (D. Nev. Aug. 30, 2019) ....................................................... 13

*Clark v. Am. Honda Motor Co.*,
   2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) .................................................... 10

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................................ 11

*Compaq Comput. Corp. v. Lapray*,
   135 S.W.3d 657 (Tex. 2004) ............................................................................... 10

*Daniel v. Ford Motor Company*,
   806 F.3d 1217 (9th Cir. 2015) ......................................................................... 4, 5

*Daugherty v. Am. Honda Motor Co.*,
   51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006) .......................................................... 11

*Elward v. Electrolux Home Prods., Inc.*,
   214 F. Supp. 3d 701 (N.D. Ill. 2016) .................................................................. 13

*Eversole v. EMC Mortg. Corp.*,
   2005 WL 3018755 (E.D. Ky. Nov. 9, 2005) .......................................................... 6

*Falco v. Nissan N. Am. Inc.*,
   2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ..................................................... 14

*Friche v. Hyundai Motor, Am.*,
   2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ........................................................ 7

*Garcia v. Gen. Motors LLC*,
   2019 WL 1209632 (E.D. Cal. Mar. 14, 2019) ................................................... 3, 5

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012) .......................................................... 5

*Grodzitsky v. Am. Honda Motor Corp.*,
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................................................ 3

*Hiller v. DaimlerChrysler Corp.*,
  2007 WL 3260199 (Mass. Super. Sept. 25, 2007) ............................................ 10

*In re AZEK Building Products, Inc., Marketing & Sales Practices Litigation*,
  82 F. Supp. 3d at 618 (D.N.J. 2015) ................................................................ 12

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Lit.*,
  2019 WL 3000646 (C.D. Cal. May 22, 2019) .................................................... 7

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ............................................................... 6

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .......................................................................... 14

*In re MyFord Touch Consumer Litig.*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ................................................................. 2

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  155 F. Supp. 3d 772 (N.D. Ill. 2016) ............................................................... 13

*In re Takata Airbag Prods. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016) .............................................................. 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., &
  Prods. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................ 12

*Johnson v. Glock, Inc.*,
  2021 WL 6804234 (N.D. Cal. Sept. 22, 2021) ................................................... 7

*Johnson v. Nissan N. Am., Inc.*,
  2018 WL 905850 (N.D. Cal. Feb. 15, 2018) ............................................... 12, 13

*Julian v. TTE Tech., Inc.*,
  2020 WL 6743912 (N.D. Cal. Nov. 17, 2020) ................................................... 9

*Kaloti Enters., Inc. v. Kellogg Sales Co.*,
  283 Wis. 2d 555 (Wis. 2005) ............................................................................. 8

*Kelsey v. Nissan N. Am.*,
  2020 WL 4592744 (C.D. Cal. July 15, 2020) .................................................... 8

*King v. Ohio Valley Terminix Co.*,
  214 S.W.2d 993 (Ky. Ct. App. 1948) ............................................................... 10

*Lorentzen v. Kroger Co.*,
  532 F. Supp. 3d (C.D. Cal. 2021) ..................................................................... 15

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ........................................................... 13

*Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*,
  807 N.E.2d 1165 (Ill. App. Ct. 2004) ................................................................ 13

*Mosqueda v. Am. Honda Motor Co., Inc.*,
  443 F. Supp. 3d 1115 (C.D. Cal. 2020) .............................................................. 8

*Murillo v. Kohl's Corp.*,
  197 F. Supp. 3d 1119 (E.D. Wis. 2016) ......................................................... 6, 7

*New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*,
  44 F.4th 393 (6th Cir. 2022) ............................................................................. 9

*Ocana v. Ford Motor Co.*,
  992 So. 2d 319 (Fla. Dist. Ct. App. 2008) ...................................................... 12

*Parenteau v. Gen. Motors, LLC*,
  2015 WL 1020499 (C.D. Cal. Mar. 5, 2015) ................................................ 3, 4

*Pascal v. Nissan N. Am., Inc.*,
  2021 WL 8441763 (C.D. Cal. July 8, 2021) ................................................... 10

*Peckerar v. Gen. Motors, LLC*,
  2020 WL 5289919 (C.D. Cal. May 27, 2020) ................................................... 4

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015) ................................................. 2, 4

*Precht v. Kia Motors Am., Inc.*,
  2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) .............................................. 15

*Progressive N. Ins. Co. of Ill. v. Ford Motor Co.*,
  259 F. Supp. 3d 887 (S.D. Ill. 2017) ................................................................ 8

*Rentas v. DaimlerChrysler Corp.*,
  936 So. 2d 747 (Fla. Dist. Ct. App. 2006) ...................................................... 12

*Roberts v. Electrolux Home Prods., Inc.*,
  2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) .................................................. 14

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal. 4th 979 (2004) ..................................................................................... 7, 8

*Sato v. Cnty. of San Bernardino*,
  2021 WL 1585210 ............................................................................................. 9

*Schneider v. BMW of N. Am., LLC*,
  2022 WL 1310457 (D. Mass. Apr. 22, 2022) ................................................. 14

*Scovil v. Medtronic Inc.*,
  2015 WL 880614 (D. Nev. Mar. 2, 2015) ...................................................... 10

*Shaw v. Jar-Ramona Plaza, LLC*,
  2015 WL 1275294 (C.D. Cal. Mar. 16, 2015) ................................................ 12

*Simpson v. Champion Petfoods USA, Inc.*,
  397 F. Supp. 3d 952 (E.D. Ky. 2019) ........................................................6

*Sloan v. Gen. Motors LLC*,
  2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ......................................2, 14

*Szep v. Gen. Motors LLC*,
  491 F. Supp. 3d 280 (N.D. Ohio 2020) ......................................................

*Tappana v. Am. Honda Motor Co.*,
  2022 WL 2526971 (C.D. Cal. July 5, 2022) ...........................................15

*Taragan v. Nissan North America, Inc.*,
  2013 WL 3157918 (N.D. Cal. 2013) ..........................................................5

*Tietsworth v. Harley-Davidson, Inc.*,
  677 N.W.2d 233 ..........................................................................................6

*Villanueva v. Am. Honda Motor Co.*,
  2019 WL 8112467 (C.D. Cal. Oct. 10, 2019) ..........................................15

*Wildin v. FCA US LLC*,
  2018 WL 3032986 (S.D. Cal. June 19, 2018) ............................................2

*Williams v. Beechnut Nutrition Corp.*,
  229 Cal. Rptr. 605 (Cal. Ct. App. 1986)....................................................10

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ....................................................................2

*Williams v. Yamaha Motor Corp., U.S.A.*,
  2015 WL 13626022 (C.D. Cal. Jan. 7, 2015)..............................................3

*Yonts v. Easton Tech. Prods.*,
  676 F. App'x 413 (6th Cir. 2017) ...............................................................6

**STATUTORY AUTHORITIES**

15 U.S.C. § 2310(e) ........................................................................................14

## PRELIMINARY STATEMENT

Several developments have narrowed the scope of the Complaint since defendants filed their motion to dismiss.  Cho dismissed his five claims under California law (Counts VII–XI).  ECF No. 42.  Banderas, the only plaintiff to sue under Nevada law, settled his claims (Count XII).  Declaration of Shon Morgan ("Morgan Decl.") ¶ 2, Ex. 1.  And plaintiffs appear to concede dismissal is warranted as to Makie's Massachusetts Consumer Protection Act claim (Count XIV), the Thompson's implied warranty claims under Kentucky law, Chmura's implied warranty claims under Wisconsin law, and the negligent misrepresentation claim (Count V).  ECF No. 44 ("Opp.") at 2 n.1.

As shown below, plaintiffs also fail to justify their remaining claims.  Thus, the entire Complaint should be dismissed.

## ARGUMENT

### I.   PLAINTIFFS' REMAINING FRAUD-BASED CLAIMS UNDER THE NDTPA, WDTPA, FDUTPA, ICFA, AND KCPA FAIL[1]

#### A.   Plaintiffs Fail to Allege Pre-Sale Knowledge

The well-established case law requires specific allegations to raise an inference of pre-sale knowledge of an alleged vehicle defect, and the Complaint here falls short. Plaintiffs rely chiefly on a few complaints to NHTSA (Compl. at ¶¶ 197–200) that relate to various models, including many unspecified models, and *different* issues than plaintiffs allege experiencing.  Thus, plaintiffs' allegations are of dubious import. And in all events, "allegations of complaints to the NHTSA are insufficient to allege knowledge," *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 294 (N.D. Ohio 2020),

---

[1]  Because Cho dismissed his claims, the California claims (including CLRA, UCL, and FAL claims) are moot.  ECF No. 42.  And the MCPA and negligent misrepresentation claims have been conceded.  Opp. at 2 n.1.

particularly where, as here, there is not an "unusually high number of complaints."[2] *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017).

Furthermore, plaintiffs' reliance on the TSBs and cases citing TSBs as evidence of pre-sale knowledge, Opp. at 10, are all misplaced because here (unlike in plaintiffs' authorities) the TSBs do not acknowledge or even address the defect alleged in the Complaint.[3] Here, the two TSBs at issue concern oil consumption generally and make no mention of the alleged piston ring assembly defect. *See* Compl. at ¶ 163 (alleging "piston ring assembly and cylinder coating in the Class Vehicles are defective"). Because the TSBs do not "explicitly address[] the claimed defect," they are not relevant and cannot establish pre-sale knowledge. *Sloan*, 2017 WL 3283998, at *7 (oil consumption TSBs that did not refer to the claimed defect could not establish knowledge of the claimed defect).

Finally, plaintiffs make the unsupportable argument that their insufficient, separate allegations about recalls, NHTSA complaints, TSBs, unidentified pre-production tests and quality control audits, and early complaints, somehow *aggregate* to allege pre-sale knowledge. *See* Opp. at 11-12. They do not. As explained in the

---

[2] Although plaintiffs offer to submit additional complaints, that effort would be futile because plaintiffs still do not contend the number of complaints for each purported class vehicle over the 10-year period would be "unusually high," as required to justify an inference of pre-sale knowledge. *Cf. Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *2 (N.D. Cal. Aug. 1, 2017) (NHTSA complaints "do not show GM's knowledge of the alleged defect" where the "plaintiffs do not allege" an unusually high number of complaints); *see also Williams*, 851 F.3d at 1027-28 (9th Cir. 2017) ("unusually high" number of complaints required defendants to establish a "separate consumer response system dedicated to handling . . . a high volume of complaints specific to premature corrosion in F-series motors"); ECF No. 34 ("Mot.") at 14 (explaining why the 194 complaints do not suffice under the law).

[3] *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *9 (N.D. Cal. July 7, 2015) (complaint and TSBs addressed same power steering issue); *Wildin v. FCA US LLC*, 2018 WL 3032986, at *5 (S.D. Cal. June 19, 2018) (complaint and TSBs addressed same powertrain control module problem); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957-60 (N.D. Cal. 2014) (complaint and TSBs addressed same "infotainment" system defect).

moving papers, Mot. at 14-15, the Nu Engine Recall plaintiffs reference addresses an entirely *different* engine than in plaintiffs' vehicles, the Kia oil consumption TSB did not address a vehicle purchased by any Kia class members at the time it was issued, and the Hyundai oil consumption TSB was issued after all relevant purchases. Moreover, a "generalized assertion" regarding unspecified "pre-release testing data" and "aggregate data from [] dealers" fails to suggest knowledge of the alleged defect at the time of the sale.  *Grodzitsky v. Am. Honda Motor Corp.*, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013); *Williams v. Yamaha Motor Corp., U.S.A.*, 2015 WL 13626022, at *11 (C.D. Cal. Jan. 7, 2015) (allegations must enable court to "draw the inference that Defendant's opportunity to learn about this alleged defect before selling their engines to the public necessarily means they did learn about the defect").

### B.     Plaintiffs Cannot Proceed Under an Actionable Omissions Theory

Plaintiffs claim they satisfy Rule 9(b) by alleging that three—but not all—of the class representatives researched undescribed portions of the Hyundai or Kia websites, reviewed unspecified "marketing and promotional materials available at the dealership," spoke with unidentified sales representatives, and saw the Monroney sticker before purchase.  Opp. at 6.[4]  Even if these conclusory allegations could be extended to all plaintiffs (they cannot), they are substantively insufficient because they focus on interactions with dealers, rather than defendants.  *See Parenteau v. Gen. Motors, LLC*, 2015 WL 1020499, at *7 (C.D. Cal. Mar. 5, 2015) (dismissing fraudulent omission claims where plaintiff did "not allege any contact with Defendant (as distinct from the dealer) prior to purchasing her vehicle where omissions regarding the defect at issue should or could have been revealed").

Indeed, plaintiffs' cases illustrate precisely what is absent from the Complaint here:  specific allegations about "the content of the omission[s] and where the omitted information should or could have been revealed."  *Garcia v. Gen. Motors LLC*, 2019

---

[4]  Rothmaler, Makie, and Chmura allege doing these things, ECF No. 1 ("Compl.") at ¶¶ 33, 46, 59, whereas Smith, Little, and the Thompsons do not. *Id.* at ¶¶ 83-112.

WL 1209632, at *7 (E.D. Cal. Mar. 14, 2019).[5]   Plaintiffs also fail to "provide representative samples of advertisements, offers, or other representations that plaintiff[s] relied on to make [their] purchase[s.]"  *Id.* at *7; *see also Parenteau*, 2015 WL 1020499, at *7 (allegations without "any degree of specificity [as to] which advertisements, offers, or other representations [plaintiff] relied on that failed to include the omitted information" do not satisfy Rule 9(b)).

Rather than plead facts, plaintiffs misdescribe the governing standard at a useless level of generality—claiming "the relevant inquiry is whether the plaintiff had an *opportunity* to receive and therefore rely on the omitted information."  Opp. at 7. For this dubious proposition, they rely on *Daniel v. Ford Motor Company*, which involved a situation where the plaintiffs presented evidence they "interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses," and the Ninth Circuit found triable issues about what relevant information could have been disclosed in the context of those specific discussions.  806 F.3d 1217, 1226 ( 9th Cir. 2015).  The Ninth Circuit had no occasion to address the issue here—plaintiffs' obligation at the pleading stage to identify with specificity the sources of information that could have contained a disclosure that would have informed plaintiffs of their alleged vehicle issues, particularly where not all plaintiffs even allege interacting with sales representatives before purchase, and

---

[5]   Courts have required plaintiffs to allege much more detail than plaintiffs allege here.  *See, e.g.*, *Philips*, 2015 WL 4111448, at *12 (finding allegations sufficient where plaintiffs alleged the television advertisements about the vehicles, website page concerning the Ford Fusion, window sticker, and brochure about the Ford Fusion that plaintiffs viewed "did not include relevant information about the EPAS system and its possible failures"); *Peckerar v. Gen. Motors, LLC*, 2020 WL 5289919, at *4 (C.D. Cal. May 27, 2020) (in addition to alleging plaintiffs reviewed the window sticker, plaintiffs alleged they reviewed the web pages, "read the owner's manual, discussed the braking system with the sales representative who sold the car, and read the sales documents at the dealership without learning that the braking system was defective").

1   one does not even allege buying from a dealer.[6]   The cases that expand *Daniel*'s

2   reasoning into this context err in so doing.

3          Next, plaintiffs argue active concealment is "essentially the same" as fraud by

4   omission.  Opp. at 8.  "But if mere nondisclosure constituted 'active concealment,'

5   the duty requirement would be subsumed and any material omission would be

6   actionable.  This is not the law."  *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL

7   313703, at *9 (C.D. Cal. Jan. 23, 2012), *aff'd* 554 F. App'x 608 (9th Cir. 2014).

8   Plaintiffs claim *Garcia* and *Taragan v. Nissan North America, Inc.*, 2013 WL

9   3157918 (N.D. Cal. 2013), are distinguishable because plaintiffs here "alleged

10  specific acts of active concealment."  Opp. at 8-9.  Not so.  Absent from the

11  Opposition is any support for the proposition that the acts alleged were "acts of active

12  concealment."  *See Taragan*, 2013 WL 3157918, at *7.  Indeed, plaintiffs point to

13  acts of the dealerships, rather than acts of defendants.  But in all events, they do not

14  show that the dealerships' alleged acts of telling someone to replenish oil levels or

15  informing someone that certain repairs were not covered under warranty constitute

16  "acts of active concealment."  Moreover, the only act by defendants that plaintiffs

17  identify is defendants' provision of TSBs, which show there's no concealment and

18  provide steps to diagnosis excessive oil consumption.  TSB 222, December 2020

19  (Kia); TSB 21-EM-003H, March 2021 (Hyundai).  As in *Taragan*, "plaintiffs offer

20  nothing more than conclusory allegations that [defendants] actively concealed the

21  defect."  2013 WL 3157918, at *7 (cleaned up).

22      **C.    The KCPA and WDTPA Claims Are Deficient[7]**

23      **KCPA**.  Plaintiffs do not dispute that the Thompsons lack privity with Kia, but

24  argue for an exception because they claim the Thompsons are intended beneficiaries

25

---

26  [6]   Plaintiffs Smith, Little, and the Thompsons do not allege interacting with sales
27  representatives at authorized dealers before purchase.  Compl. at ¶¶ 83-112.  And
    Plaintiff Smith did not buy her vehicle at an authorized dealer.  *Id.* at ¶ 83.
28  [7]   Plaintiffs concede the MCPA claim should be dismissed.  Opp. at 2 n.1.

of Kia's warranty (Opp. at 12-13).  The Court should reject plaintiffs' argument. Although the Kentucky Supreme Court has not decided the issue, the "seminal Kentucky case interpreting the scope of the KCPA . . . require[s] privity of contract between the parties." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962-63 (E.D. Ky. 2019) (rejecting exception and collecting supportive cases); *Eversole v. EMC Mortg. Corp.*, 2005 WL 3018755, at *2 (E.D. Ky. Nov. 9, 2005) ("The language of the [KCPA] plainly contemplates an action by a purchaser against his immediate seller.").  Under these circumstances, the more reasoned approach is for this Court to "decline to expand Kentucky law" and instead adhere to "the Kentucky Supreme Court's strict application of the privity requirement."  *See Simpson*, 397 F. Supp. 3d at 968; *Yonts v. Easton Tech. Prods.*, 676 F. App'x 413, 420 (6th Cir. 2017) ("[B]ecause Yonts purchased the Easton arrow second-hand, at least one other consumer separates him from any retailer or distributor, let alone the actual manufacturer. If a consumer so far removed from the manufacturer could claim express-warranty or KCPA protection, §§ 355.2-318's and 367.220's limitations would be meaningless.").

**WDTPA**.    A  WDTPA  claim  must  be  premised  on  affirmative misrepresentations, not omissions or concealments, but plaintiffs concede they do not allege any relevant misrepresentations (Opp. at 5 n.4).  *See Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. Mar. 26, 2004) ("The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading."). Although plaintiffs wave at the notion that their "'concealment-related' averments" somehow suffice (Opp. at 13), their own cases confirm the failure to allege any related misrepresentations is fatal.  *E.g.*, *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1127 (E.D. Wis. 2016) (non-actionable omissions might be relevant *if* they interplay with affirmative misrepresentations); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017) ("Plaintiffs certainly plead their fair share of

misrepresentations. . . .").  Plaintiffs cannot get any traction by reference to the generic advertising that the vehicles are high quality and dependable, Opp. at 13, because no plaintiff alleges to have seen or relied upon such statements, which are non-actionable puffery.  *Murillo*, 197 F. Supp. 3d at 1128 (statements that relate "the degree of quality of [a] product, the truth or falsity of which cannot be precisely determined" and "mere 'puffery'" are "not actionable under the WDTPA").

### D.  <u>Plaintiffs Cannot Justify An Exception To The Economic Loss Rule[8]</u>

Plaintiffs contend the economic loss rule should not preclude their omission-based, fraudulent concealment claims.  But their own authorities explain why no exception applies here.  Indeed, in *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004), the court excepted the case from the economic loss rule because there were *affirmative* fraudulent misrepresentation allegations.  *Id.* at 990 ("For purposes of our decision, we focus solely on the fraud and misrepresentation claim based on Dana's provision of the false certificates of conformance.").  Plaintiffs rely on cases that misapply *Robinson* to extend its scope without meaningful analysis.  *Compare Johnson v. Glock, Inc.*, 2021 WL 6804234, at *10 (N.D. Cal. Sept. 22, 2021) ("fraudulent omissions are materially the same as fraudulent misrepresentations in the ways that mattered to *Robinson*"), *and In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Lit.*, 2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019) (same), *with Friche v. Hyundai Motor, Am.*, 2022 WL 1599868, at *7 (C.D. Cal. Jan. 28, 2022) (California district courts "have consistently held" the *Robinson* holding is limited to "affirmative misrepresentations" and "does not apply to claims of fraudulent inducement by way of omission or concealment") (collecting cases). Because plaintiffs concede they do not allege any misrepresentation-based fraud

---

[8]    Plaintiffs concede their negligent misrepresentation claim and any misrepresentation-based fraud claims.  Opp. at 2 n.1 & 5 n.4.

claims (Opp. at. 5 n.4), their attempt to bring their Complaint within *Robinson* is unavailing.[9]

Similarly, plaintiffs cannot support their invocation of the fraudulent inducement exception to the economic loss doctrine.  First, and most importantly, plaintiffs only claim fraudulent inducement occurred as to Banderas, the Nevada plaintiff who has settled his claim and no longer has standing. *See* Morgan Decl. ¶ 2, Ex. 1.  (And Plaintiffs do not contend Nevada recognizes any exception to the economic loss rule).  Second, this exception is limited to claims based on affirmative misrepresentations, not omissions.  *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1134 (C.D. Cal. 2020) ("Because Plaintiffs concede that they seek only economic damages and premise their fraud claim on alleged omissions, the Court agrees with Honda that Plaintiffs' fraudulent omission claim is barred by the economic loss rule."); *Kelsey v. Nissan N. Am.*, 2020 WL 4592744, at *2 (C.D. Cal. July 15, 2020) ("economic loss rule" prohibits "follow-on fraudulent inducement claim in run-of-the-mill . . . warranty breach actions") (collecting cases).   And although plaintiffs point out that fraudulent inducement exceptions exist in limited scenarios under Illinois, Wisconsin, and Texas law, none of those circumstances apply here.[10]   Furthermore, this Court should not create exceptions for Nevada and

---

[9]   There were other compelling reasons in *Robinson* to deem the misrepresentation and fraud claims independent of the contract breach and thus not barred by the economic loss doctrine, including that the misrepresentations were made *after* the contract at issue was formed.  *Robinson*, 34 Cal. 4th at 990.  That rationale is absent here, where any omissions were part and parcel of the sale that carries the warranties.

[10]   *Progressive N. Ins. Co. of Ill. v. Ford Motor Co.*, 259 F. Supp. 3d 887, 891-92 (S.D. Ill. 2017) (recognizing three exceptions to the economic loss doctrine: (1) personal injury or damage to other property caused by sudden or dangerous occurrence, (2) damages caused by defendant's "intentional, false *representation*," and (3) negligent business information supplied in the course of business transactions) (emphasis added); *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 283 Wis. 2d 555, 585 (Wis. 2005) ("To invoke this narrow fraud in the inducement exception . . . a plaintiff must show. . . the fraud concerns matters whose risk and responsibility *did not relate*

Massachusetts (where plaintiffs acknowledge none are recognized, Opp. at 15) or Kentucky, which has not reached this issue. *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 415 (6th Cir. 2022) ("Even if the Kentucky Supreme Court adopted a broad fraudulent-inducement exception, [plaintiff] would be unable to recover under both theories for the same damages" "because [plaintiff] is attempting to recover the same damages under both breach of contract and fraudulent inducement").

## II.   PLAINTIFFS' EQUITABLE CLAIMS SHOULD BE DISMISSED[11]

As set forth in defendants' moving papers, Mot. at 17-18, plaintiffs cannot pursue equitable claims because they possess an adequate legal remedy.  Plaintiffs fail to address this argument as to the FDUTPA and KCPA claims, apparently conceding it. *See Sato v. Cnty. of San Bernardino*, 2021 WL 1585210, *9 (C.D. Cal. Mar. 4, 2021) (dismissing claim where "[p]laintiffs d[id] not address [defendants'] argument in their opposition at all, and therefore concede[d] [the] argument").

Plaintiffs contend their unjust enrichment claims are pleaded in the alternative, and say dismissal would be premature because defendants have challenged the warranty claims.  Opp. at 15-16.  But courts routinely reject that argument. *See, e.g.*, *Julian v. TTE Tech., Inc.*, 2020 WL 6743912, at *4 (N.D. Cal. Nov. 17, 2020) (dismissing equitable claims, including unjust enrichment claim, and rejecting

---

*to the quality or the characteristics* of the goods for which the parties contracted.") (emphasis added); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338-39 (S.D. Fla. 2016) (Florida Supreme Court did not intend to "abridge the economic loss rule in the products liability setting to allow fraudulent inducement claims . . . even where the action for fraud depends upon precisely the same allegations as a warranty claim—i.e., a claim the product failed to work as promised."); *BCC Merch. Sols. Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 466-67 (N.D. Tex. 2015) ("[Plaintiff] cannot recover its economic losses under a fraud-based theory . . . unless it can show that [defendants] made the above promises . . . with no intention of performing the act.") (internal quotations omitted).

[11]   Plaintiffs dismissed the UCL, FAL, and CLRA claims.  ECF No. 42; Opp. at 2 n.1; *see* Compl. ¶¶ 296, 309, 318.

1   arguments that dismissal of equitable claims would be premature and equitable claims

2   should be allowed to proceed as they were pled in the alternative); *Clark v. Am. Honda*

3   *Motor Co.*, 2021 WL 4260232, at *5 (C.D. Cal. Sept. 14, 2021) (dismissing unjust

4   enrichment claim and rejecting argument that unjust enrichment could proceed in the

5   alternative because defendant challenged the breach of warranty claims).

6   **III.   PLAINTIFFS' WARRANTY CLAIMS FAIL[12]**

7   **A.   Plaintiffs Fail to Allege Express Warranty Terms or Reliance**

8   Plaintiffs contend they satisfied their burden to plead precise warranty terms by

9   alleging a 10-year/100,000 mile Powertrain Limited Warranty and a 5-year/60,000

10  mile New Vehicle Limited Warranty exists and alleging, in conclusory fashion, that

11  these warranties cover the alleged "defect."  Opp. at 16-17.  However, plaintiffs'

12  averments address only the duration of the warranty, not its coverage or any other

13  terms from which any breach could be inferred based on plaintiffs' disparate

14  experiences.  *Cf. Pascal v. Nissan N. Am., Inc.*, 2021 WL 8441763, at *10 (C.D. Cal.

15  July 8, 2021) ("This single statement, however, fails to identify any express term of

16  the warranty that was allegedly breached.").

17  Plaintiffs argue reliance on the warranty is not required (Opp. at 17), a position

18  rejected under California law, which plaintiffs claim applies to the nationwide

19  warranty claims.[13]  *See Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608

20  (Cal. Ct. App. 1986) ("to plead a cause of action for breach of express warranty, one

21

22  _____

23  [12]  Because Cho's claims were voluntarily dismissed (ECF No. 42), no Song-Beverly
    claim is at issue.  *See* Compl. ¶ 326.

24  [13]  *See* Compl. at ¶¶ 132, 255–271; *cf. Pascal*, 2021 WL 8441763, at *11 (nationwide
    warranty claims under California law must satisfy California law).  To the extent other
25  state laws govern, Massachusetts, Nevada, Texas, and Kentucky apply the same
    standard and plaintiffs do not dispute this.  *E.g.*, *Hiller v. DaimlerChrysler Corp.*,
26  2007 WL 3260199, at *4 (Mass. Super. Sept. 25, 2007); *Scovil v. Medtronic Inc.*,
    2015 WL 880614, at *12 (D. Nev. Mar. 2, 2015); *Compaq Comput. Corp. v. Lapray*,
27  135 S.W.3d 657, 676 (Tex. 2004); *King v. Ohio Valley Terminix Co.*, 214 S.W.2d
28  993, 996 (Ky. Ct. App. 1948).  Wisconsin, Illinois, and Florida do not require reliance.

1  must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon,

2  and a breach of that warranty which proximately causes plaintiff injury").

### B.    Plaintiff Little Only Needed Repair Outside Warranty Limits

4       Although Plaintiff Little alleges that she presented her vehicle for certain tests

5  within the warranty limit and that those tests were performed but inconclusive, she

6  does not allege needing an engine replacement until around 30,000 miles later at

7  125,468 odometer miles, indisputably outside warranty limits.  Compl. at ¶¶ 100-01.

8  Contrary to plaintiffs' urging (Opp. at 18-19), it does not suffice that Little alleges a

9  defect existed within the warranty period.  *See Clemens v. DaimlerChrysler Corp.*,

10 534 F.3d 1017, 1022 (9th Cir. 2008) (affirming dismissal of breach of express

11 warranty claim even though plaintiff alleged the defect "existed before the warranty

12 expired, and that DaimlerChrysler had knowledge of the defect at the time of sale");

13 *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 123 (Cal. Ct. App. 2006),

14 *as modified* (Nov. 8, 2006) ("[A]s a matter of law, in giving its promise to repair or

15 replace any part that was defective in material or workmanship and stating the car was

16 covered for three years or 36,000 miles, Honda did not agree, and Plaintiffs did not

17 understand it to agree, to repair latent defects that lead to a malfunction *after the term*

18 *of the warranty*.") (emphasis added).  On the contrary, as plaintiffs' case makes clear,

19 it is defendants' actions *within the warranty period* that matter.  *Apodaca v. Whirlpool*

20 *Corp.*, 2013 WL 6477821, at *9 (C.D. Cal. Nov. 8, 2013) ("Manufacturers are 'not

21 liable for breach of express warranty merely because a product manifests recurring

22 failures during the warranty period. Rather, the question is whether [a plaintiff] sought

23 repairs, refunds or replacements and, if so, whether [the manufacturer] responded

24 appropriately under the warranty.'").  Here, plaintiff fails to allege a repairable defect

25 was presented within the warranty period that defendants refused to fix.[14]

---

27 [14]  Though plaintiffs rely on *In re Toyota Motor Corp. Unintended Acceleration*

28 *Mktg., Sales Pracs., & Prods. Liab. Litig.*, that case addressed a different issue not

## C.   Lack of Privity Bars The Implied Warranty Claims of Plaintiffs Rothmaler, Chmura, Banderas, Smith, and the Thompsons[15]

Plaintiffs dispute only Rothmaler's claims under Illinois law, Banderas' claims under Nevada law,[16] and Smith's claims under Florida law, claiming privity can be satisfied through a third-party beneficiary argument.  Opp. at 19-21.  Not so.  First, plaintiffs' only case discussing Florida law is *In re AZEK Building Products, Inc., Marketing & Sales Practices Litigation*, which merely followed a case that applied New York law and found fact disputes precluded resolving privity on the pleadings where the plaintiffs alleged they bought the product at issue from a defendant's agent. 82 F. Supp. 3d at 618 (D.N.J. 2015).  "Modern Florida courts consistently hold in actions by consumers against vehicle manufacturers that 'privity of contract is required to maintain an action for breach of implied warranty,' and have not recognized a third-party beneficiary exception." *Johnson v. Nissan N. Am., Inc.*, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) (quoting *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008)); *see also Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747, 751 (Fla. Dist. Ct. App. 2006) (affirming dismissal of vehicle purchaser's breach of implied warranty claim for lack of privity); *see also Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 895 (11th Cir. 2006) (under Florida law, "the absence of privity between [plaintiff] and [defendant] is dispositive: [plaintiff's] claim of breach of implied warranty fails as a matter of law").

---

present here—whether relief beyond that provided for by the warranties was barred by the terms of the warranty.  754 F. Supp. 2d 1145, 1178 (C.D. Cal. 2010).

[15]   The Thompsons and Chmura concede they cannot plead implied warranty claims under Kentucky and Wisconsin law, respectively.  Opp. at 2 n.1

[16]   Banderas' substantive claims are mooted by his recent settlement and release. Morgan Decl. ¶ 2, Ex. 1; *Shaw v. Jar-Ramona Plaza, LLC*, 2015 WL 1275294, at*6 (C.D. Cal. Mar. 16, 2015) ("a claim may become moot even after filing if a litigant does not continue to have a personal stake in the outcome of the lawsuit that is likely to be redressed by a favorable decision" such as when a plaintiff "settled his claims").

Illinois law applies the privity requirement in a similar way. Although Plaintiffs rely on *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016), which recognized a third-party beneficiary exception, courts applying Illinois law refuse to follow *Elward*'s "reasoning because Illinois state courts are clear on Illinois law"—a plaintiff "may not argue that she is a third-party beneficiary of [a defendant's] contracts with its dealers; Illinois law recognizes no such exception to the privity requirement." *Johnson*, 2018 WL 905850, at *5; *see also Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004) ("Although this vertical privity requirement has been challenged on a number of occasions, our supreme court has consistently declined to abolish the doctrine in cases where purely economic damages are sought.").

Privity is also required under Nevada law. Plaintiffs flounder in their attempt to discredit *Claridge v. I-Flow Corporation*, 2019 WL 4139433, at *3 (D. Nev. Aug. 30, 2019), by contending *Claridge* was based on obsolete law, relying on a decision from a Michigan federal court issued months *before Claridge*. Opp. at 20-21 (citing *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 787 (E.D. Mich. 2019)). The *Claridge* court carefully surveyed recent cases, including opinions by the Nevada Supreme Court and Ninth Circuit, to confirm the privity requirement remains in force.

Finally, plaintiffs ask that a decision on privity be deferred. Opp. at 21. However, as plaintiffs' own citation makes clear, "[w]hile discovery may yield additional supporting evidence upon which Plaintiffs can rely, Plaintiffs are also required to plead a sufficient basis in the Complaint to state a claim for privity." *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016). They fail to do so here as they do not plead any facts that could support a finding of privity based on the governing case law.

**D.**   **Plaintiffs Makie, Smith, and the Thompsons[17] Do Not Adequately Allege Their Vehicles are Unfit for Ordinary Use**

Plaintiffs argue that merely invoking supposed "safety" issues such as "engine stalling and engine failure" satisfies the requirement of alleging unmerchantability. Opp. at 21. However, Makie, Smith, and the Thompsons do not allege experiencing such issues; they allege only a potential need to add more oil to their vehicles. Compl. at ¶¶ 45-57, 83-97, 107-112. Thus, their allegations are far removed from those in the cases they cite.[18] There is no reason to deviate from decisions in similar oil consumption cases where courts found a failure to allege unfitness. *See, e.g.*, *Sloan*, 2017 WL 3283998, at *5 (failure to allege excessive oil consumption interfered with safe vehicle operation); *Schneider v. BMW of N. Am., LLC*, 2022 WL 1310457, at *11 (D. Mass. Apr. 22, 2022) (mere inconvenience of oil refills not enough).

**E.**   **Plaintiffs' Magnuson-Moss Warranty Claims Fail**

Plaintiffs attempt to satisfy their notice requirement[19] via a conclusory allegation lacking *facts* that could support an inference that defendants were afforded an opportunity to cure. Opp. at 22 (citing Compl. at ¶ 251 (alleging "Defendants were provided notice of the claims raised by Plaintiffs and was [sic] afforded a reasonable opportunity to cure")). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

[17]   The Thompsons concede their implied warranty claims. Opp. at 2 n.1
[18]   *See Falco v. Nissan N. Am. Inc.*, 2013 WL 5575065, at *1, *9 (C.D. Cal. Oct. 10, 2013) (unfitness was sufficiently pled where TCTS malfunction allegedly caused catastrophic engine failure and inability to accelerate, maintain speed, idle); *Roberts v. Electrolux Home Prods., Inc.*, 2013 WL 7753579, at *5 (C.D. Cal. Mar. 4, 2013) (unmerchantability pled where the "allegedly defective design of the dryer cause[d] lint to accumulate in close proximity to the heat source, which creates a fire hazard").
[19]   15 U.S.C. § 2310(e) (requiring notice providing opportunity to cure).

1      In addition, as shown in the moving papers (Mot. at 18-23), the MMWA claim
2 fails for failure to plead a viable predicate state law warranty claim.

3 **IV.   PLAINTIFFS LACK STANDING FOR VEHICLES NOT PURCHASED**

4      As plaintiffs' cases acknowledge, although some district courts in the Ninth
5 Circuit allow plaintiffs to "represent class members who did not buy the same product
6 as they did," in the event they allow plaintiffs to do so, they nonetheless require
7 "substantial similarity."  *Tappana v. Am. Honda Motor Co.*, 2022 WL 2526971, at *3
8 (C.D. Cal. July 5, 2022).  As shown in the moving papers (Mot. at 23-25), the better
9 approach rejects the "substantial similarity" analysis and prohibits plaintiffs from
10 suing regarding products they did not purchase.  *See Lorentzen v. Kroger Co.*, 532 F.
11 Supp. 3d, 901 908-09 (C.D. Cal. 2021) (the "'substantial similarity' analysis appears
12 to be inconsistent with the basic concept of standing").

13      In all events, plaintiffs' conclusory allegations cannot establish sufficient
14 similarity among their vehicles and their even broader alleged class (Compl. at ¶ 1).
15 Indeed, unlike the cases they cite,[20] plaintiffs merely allege the truism that all the
16 vehicles contain pistons and piston rings (Opp. at 23), without providing any factual
17 basis to infer each vehicle is purportedly "defective" in the same way.  *See Precht v.
18 Kia Motors Am., Inc.*, 2014 WL 10988343, at *16 (C.D. Cal. Dec. 29, 2014) ("the
19 bald assertion that all the Class Vehicles contained the same defect" is not enough);
20 *see also Villanueva v. Am. Honda Motor Co.*, 2019 WL 8112467, at *16 (C.D. Cal.
21 Oct. 10, 2019) ("Although Plaintiffs define the non-purchased vehicles as having the
22 'same defective [] system,' Plaintiffs do not provide any other details.").

23                              **Conclusion**

24      Accordingly, the complaint should be dismissed in its entirety.

25

26 [20]  *E.g.*, *Tappana*, 2022 WL 2526971, at *3 (alleging "Class Vehicles all utilize the
27 same tempered glass Sunroofs," all of which were alleged to have the same "physical
 makeup . . . (i.e., the use of the same thin, tempered Soda-lime Glass containing the
28 same manufacturing defects)").

1  DATED:  September 28, 2022          Respectfully submitted,

2                                      QUINN EMANUEL URQUHART &
3                                      SULLIVAN, LLP

4

5

6                                      By /s/ Shon Morgan
                                          Shon Morgan
7                                         Attorneys for Defendants Hyundai Motor
                                          Company, Ltd., Hyundai Motor America,
8                                         Inc., Kia America, Inc., and Kia
9                                         Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28