1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 DAVY CHO, BRYAN ROTHMALER, | Case No. 8:22-cv-00448-SPG-KES |
| 12 BETH MAKIE, ANNA CHMURA, ANTHONY BANDERAS, MICHELLE | **ORDER GRANTING DEFENDANTS'** |
| 13 SMITH, CATHERINE LITTLE, LUTICIA | **MOTION TO DISMISS [ECF NO. 34]** |
| 14 THOMPSON, and THOMAS THOMPSON, on behalf of themselves and | |
| 15 all others similarly situated, | |
| 16                            Plaintiffs, | |
|                v. | |
| 17 HYUNDAI MOTOR COMPANY, LTD., | |
| 18 HYUNDAI MOTOR AMERICA, INC., KIA AMERICA, INC., and KIA | |
| 19 MOTORS CORPORATION, | |
| 20                         Defendants. | |

21

22       Before the Court is Defendants Hyundai Motor Company, Ltd., Hyundai Motor

23 America, Inc., Kia America, Inc., and Kia Corporation's motion to dismiss pursuant to

24 Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). (ECF No. 34). Plaintiffs oppose.

25 (ECF No. 44). The Court heard oral argument on October 12, 2022. (ECF No. 47). Having

26 considered the parties' submissions, the relevant law, the record in this case, and the

27 arguments of counsel during the hearing on the motion, the Court **GRANTS** Defendants'

28 Motion to Dismiss.

I.      **BACKGROUND**

  A.      **Factual Allegations**

Plaintiffs allege certain vehicles[1] manufactured by Hyundai and Kia consume oil at an excessive rate (hereinafter, the "Oil Consumption Defect"). (ECF No. 1 ("Compl.") ¶ 2). The Class Vehicles contain combustion engines[2] with four pistons that convert the pressure created by the combustion of gasoline mixed with air into a rotating motion. (*Id.* ¶ 155). Engine oil is used to lubricate the piston, piston rings, and cylinder wall as the piston moves up and down. (*Id.* ¶ 156). The top sidewall of each piston contains flexible metal rings that, when correctly sized, installed, and properly tensioned, are supposed to prevent engine oil from entering the combustion chamber. (*Id.* ¶ 157). The Oil Consumption Defect stems from faulty piston rings within the engines. (*Id.* ¶ 163). The Oil Consumption Defect allows engine oil to bypass the piston rings and enter the combustion chamber, where it is burned off during the combustion cycle. (*Id.* ¶ 163). This reduces the oil available to lubricate the engine. (*Id.* ¶ 164). If there is insufficient engine oil, the vehicle's engine will lack the necessary lubrication or cooling, which in turn may cause the premature wear of internal parts, inadequate performance, oil sludge, and potentially catastrophic engine failure. (*Id.* ¶ 153).

---

[1] The vehicles include the following: Model Year ("MY") 2012-2020 Hyundai Elantra; MY 2009–2018 Hyundai Genesis Coupe; MY 2019-2021 Hyundai Kona; MY 2020-2021 Hyundai Palisade; MY 2010-2012 and 2015-2021 Hyundai Santa Fe; 2009-2010 and 2015-2021 Hyundai Sonata; MY 2011–2021 Hyundai Sonata Hybrid; MY 2010-2013 and 2015-2021 Hyundai Tucson; MY 2011-2021 Hyundai Veloster; MY 2020-2021 Hyundai Venue2; MY 2010–2021 Kia Forte; MY 2017-2020 Kia Niro; MY 2011–2020 Kia Optima and Optima Hybrid; MY 2012–2021 Kia Rio; MY 2011–2020 Kia Sorento; MY 2012–2021 Kia Soul; MY 2011–2020 Kia Sportage; MY 2018-2021 Kia Stinger; and MY 2022 Kia K5 (together, the "Class Vehicles"). (ECF No. 1 ¶ 1).
[2] Other than stating the Class Vehicles contain combustion engines, Plaintiffs do not identify the specific types of engines included in each of the Class Vehicles.

**B.    The Parties**

Plaintiffs Davy Cho, Bryan Rothmaler, Beth Makie, Anna Chmura, Anthony Banderas, Michelle Smith, Catherine Little, Luticia Thompson and Thomas Thompson seek to represent classes of current and former owners and lessees of the Class Vehicles.

Davy Cho, a California resident, purchased a 2022 Hyundai Santa Fe with a 1.6L Gamma GDI engine in November 2021. (*Id.* ¶ 23). Plaintiff Cho researched the vehicle on Hyundai's website, reviewed Hyundai's marketing and promotional materials, and spoke with Hyundai sales representatives before his purchase. (*Id.* ¶ 24). After 4,300 miles, he alleges he experienced frequent "low" oil levels and had to add oil approximately every 1,000 miles. (*Id.* ¶¶ 25-28).

Bryan Rothmaler, an Illinois resident, purchased a 2017 Hyundai Tucson Sport with a 1.6L Gamma GDI in February 2019. (*Id.* ¶ 32). He similarly researched the vehicle before his purchase. (*Id.* ¶ 33). In or about April 2021, Plaintiff Rothmaler noticed "shakiness and hesitation" when driving his vehicle. (*Id.* ¶ 34). He brought his vehicle in to have it evaluated and was told there were no recalls or service campaigns that applied to his vehicle. (*Id.* ¶¶ 34, 35). In or about November 2021, Plaintiff Rothmaler sent his vehicle in for service after the oil light went on and he noticed a "ticking noise coming from the engine department." (*Id.* ¶¶ 36, 37). Hyundai's service department informed him that his engine had failed due to engine sludge and denied him warranty coverage while his vehicle had approximately 71,000 miles on its odometer. (*Id.* ¶¶ 39-41).

Beth Makie, a Massachusetts resident, bought a used 2016 Kia Sorento on June 19, 2018. (*Id.* ¶ 45). She conducted the same research as Plaintiffs Cho and Rothmaler. (*Id.* ¶ 46). On July 2, 2021, Plaintiff Makie took her vehicle for a scheduled oil change. (*Id.* ¶ 47). She was informed her engine oil level was low and thereafter had to frequently add oil to her vehicle. (*Id.* ¶¶ 47-49).

Anna Chmura, a Wisconsin resident, purchased a 2018 Hyundai Santa Fe Sport with a 2.4L Theta II GDI engine on May 5, 2018. (*Id.* ¶ 58). She conducted similar research before purchasing the vehicle, including reviewing Hyundai's marketing and promotional

materials, speaking with a sales representative at a dealership, and reviewing the vehicle's Monroney stickers.  (*Id.* ¶ 59).  Plaintiff Chmura experienced low oil levels in her vehicle despite recently having had an oil change.  (*Id.* ¶ 61).  She was denied warranty repairs and paid approximately $5,055 to replace her engine.  (*Id.* ¶¶ 62, 65).

Anthony Banderas, a Nevada resident, purchased a 2020 Hyundai Kona in November 2020.  (*Id.* ¶ 70).  He reviewed Hyundai's marketing and promotional material before purchasing the vehicle.  (*Id.* ¶ 71).  After he purchased his vehicle, Plaintiff Banderas noticed the oil light would occasionally flash and his car would rumble.  (*Id.* ¶¶ 72, 76).  In or about July 2021, Plaintiff Banderas's engine caught fire.  (*Id.* ¶ 77).  At the time of the engine fire, his vehicle had approximately 34,000 miles on it.  (*Id.* ¶ 79).  On September 7, 2022, Plaintiff Banderas settled his claims with Hyundai.  (ECF No. 46, Ex. 1).

Michelle Smith, a Florida resident, purchased a used 2016 Hyundai Sonata with a 2.4L Theta II engine on April 23, 2020.  (*Id.* ¶ 83).  She underwent numerous oil consumption tests.  (*Id.* ¶¶ 85-90).  Hyundai declined to replace her engine due to excessive oil consumption, indicating the rate of consumption was "within specifications." (*Id.* ¶ 90).

Catherine Little, a Texas resident, purchased a 2017 Hyundai Sonata with a 2.4L Theta II engine on July 6, 2017.  (*Id.* ¶ 98).  She, too, experienced issues with the engine's oil level.  (*Id.* ¶¶ 99-100).  On February 2, 2022, Plaintiff Little brought her vehicle to a dealership in Texas to check the engine.  (*Id.* ¶ 101).  At that point, the vehicle had 125,468 miles on its odometer.  (*Id.*).  The dealership determined the engine needed replacement at an estimated cost of $10,500.  (*Id.* ¶ 102).

Luticia and Thomas Thompson, residents of Kentucky, purchased a certified pre-owned 2016 Kia Sorento with a 2.0L Theta II engine on May 15, 2018.  (*Id.* ¶ 107).  They experienced issues with their vehicle's oil consumption and brought their car in for maintenance on numerous occasions.  (*Id.* ¶¶ 108, 109).

### C.   Procedural History

On behalf of a nationwide class, or alternatively on behalf of each respective state sub-classes, Plaintiffs assert the following claims: violations of the Magnuson-Moss

Warranty Act ("MMWA") (Count I); breaches of express warranty (Count II); breaches of implied warranty of merchantability (Count III); unjust enrichment (Count IV); negligent misrepresentation on behalf of each of the respective state sub-classes (Count V); fraudulent concealment on behalf of a nationwide class, or alternatively on behalf of each of the respective state sub-classes (Count VI); violations of the California Consumer Legal Remedies Act ("CLRA") on behalf of the California Class (Count VII); violations of California's Unfair Competition Law ("UCL") on behalf of the California Class (Count VIII); violations of California's False Advertising Law ("FAL") on behalf of the California Class (Count IX); breaches of express and implied warranty under California's Song-Beverly Consumer Warranty Act on behalf of the California Class (Counts X, XI); violations of the Nevada Deceptive Trade Practices Act ("NDTPA") on behalf of the Nevada Class (Count XII); violations of the Wisconsin Deceptive Trade Practices Act ("WDTPA") on behalf of the Wisconsin Class (Count XIII); violations of the Massachusetts Consumer Protection Act ("MCPA") on behalf of the Massachusetts class (Count XIV); violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") on behalf of the Florida class (Count XV); violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") on behalf of the Illinois class (Count XVI); and violations of the Kentucky Consumer Protection Act ("KCPA") on behalf of the Kentucky Class (Count XVII).

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) on June 28, 2022. (ECF No. 34 ("Mot.")). Plaintiffs opposed on August 31, 2022, (ECF No. 44 ("Opp.")), and Defendants replied on September 28, 2022. (ECF No. 45 ("Reply")).

Shortly after Defendants filed their motion to dismiss, Plaintiff Davy Cho voluntarily dismissed his five claims under California law (Counts VII-XI),[3] and Plaintiff Banderas

---

[3] On June 28, 2022, Defendants also moved to compel arbitration against Plaintiff Cho. (ECF No. 33). Following his notice of voluntarily dismissal pursuant to Federal Rule of

settled his claim under Nevada Law (Count XII).  *See* (ECF No. 42; ECF No. 46, Ex. 1).  Plaintiffs also voluntarily conceded the following claims: Plaintiff Makie's MCPA claim, the Thompson Plaintiffs' implied warranty claims under Kentucky law, Plaintiff Chmura's implied warranty claims under Wisconsin law, the negligent misrepresentation claims, and any misrepresentation-based fraud claims.  (Opp. at 2 n.1, 5 n.4).  The Court heard argument on October 12, 2022.  (ECF No. 47).

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction.  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."  *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010).  In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims.  *Id*.

Rule 12(b)(1) jurisdictional challenges can be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply with equal force to Article III standing when it is being challenged on the face of the complaint.  *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*).  Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

---

Civil Procedure 41(a)(1)(A)(i), the Court vacated Defendants' motion to compel arbitration as moot.  (ECF No. 43).

**B.     Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).  When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## III.   DISCUSSION

**A.     Choice of Law**

Plaintiffs contend California law applies to their nationwide claims.  (Compl. ¶ 132).  Defendants do not disagree.  In *Mazza v. American Honda Motor Co.*, the Ninth Circuit held—at the class certification stage—that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the

transaction took place."  666 F.3d 581, 594 (9th Cir. 2012).  However, courts in this district have often "declined to apply *Mazza*'s choice-of-law analysis at the pleading stage." *Pascal v. Nissan N. Am., Inc.*, No. 8:20-cv-00492-JLS-JDE, 2021 WL 8441763, at *4 (C.D. Cal. July 8, 2021).  Therefore, given the parties' agreement that California law governs the nationwide class, along with *Mazza* befitting the class certification stage instead of the instant pleading stage, the Court will apply California law to Plaintiffs' nationwide class claims.

### B.    Plaintiffs' Fraud-Based Claims

Defendants argue that Plaintiffs' fraud-based claims should be dismissed for three main reason:  first, Plaintiffs' claims are barred by the economic loss doctrine, which bars a plaintiff from recovery in tort if the damages represent purely economic loss; second, Plaintiffs fail to meet the heightened pleading standard under Federal Rule 9(b); and third, Plaintiffs fail to allege Defendants knew of the Oil Consumption Defect at or before the time of their purchase.  The Court addresses each in turn.[4]

#### 1.    Economic Loss Rule

Defendants argue Plaintiffs' fraud-based common law claims are barred by the economic loss doctrine.  Because Plaintiffs concede their negligent misrepresentation, the Court considers only whether the economic loss doctrine bars Plaintiffs' claim for fraudulent concealment.  Given the application of California law to the nationwide class, the Court will first address whether the economic loss rule bars Plaintiffs nationwide claims under California law and then will address the various proposed state sub-classes.

---

[4] Defendants initially moved to dismiss Plaintiffs' claims for fraudulent concealment and negligent misrepresentation, as well as those asserted under the CLRA, UCL, FAL, NDTPA, WDTPA, MCPA, FDUTPA, ICFA, and KCPA.  (Mot. at 8).  However, as explained *supra*, the only remaining fraud-based claims in this action following Plaintiffs' dismissals, settlements, and concessions are for fraudulent concealment and those asserted under the WDTPA, FDUTPA, ICFA, and KCPA.

a)    *Nationwide Class*

Defendants argue Plaintiffs' nationwide fraudulent omission and concealment claims are barred under the economic loss rule. (Mot. at 19-20). The economic loss rule precludes recovery in tort where a plaintiff's damages consist solely of economic loss. *See Seely v. White Motor Co*., 63 Cal. 2d 9, 17–18 (1965), *superseded by statute on other grounds*. California courts define economic loss as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Robinson Helicopter Co., Inc. v. Dana Corp*., 34 Cal. 4th 979, 988 (2004) (internal citation omitted). Unless the purchaser "can demonstrate harm above and beyond a broken contractual promise," the economic loss rule requires that he recover in contract for purely economic loss. *Id.* (noting "the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other" (internal citation and quotation marks omitted)). Plaintiffs have not alleged in their Complaint or argued in their moving papers that Defendants are liable for anything other than economic damages.

Plaintiffs suggest their fraud claims fall under an exception to the rule. In *Robinson Helicopter Co. v. Dana Corp*., the California Supreme Court held that the economic loss rule does not apply where the contract was induced by affirmative fraudulent misrepresentations. 34 Cal. 4th at 989. However, Plaintiffs concede their fraud claims are based only on omissions—not affirmative representations. (Opp. at 14-15). Nevertheless, Plaintiffs cite a few cases that have extended *Robinson Helicopter* to fraudulent omissions. While Plaintiffs are correct that there is some conflict in the law,[5] the Court agrees with the "weight of authority within the Ninth Circuit" that the "economic loss rule applies to fraudulent omission claims under California law." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *24 (N.D. Cal. Apr. 23, 2020) (collecting cases); *see*

---

[5] The Ninth Circuit recently certified the unanswered question of whether fraudulent concealment claims are exempted from the economic loss rule to the California Supreme Court. *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021).

*also Friche v. Hyundai Motor, Am*., No. SACV 21-01324-CJC (ADSx), 2022 WL 1599868, at *7 (C.D. Cal. Jan. 28, 2022) ("In accord with the narrow holding in *Robinson Helicopter*, district courts in California have consistently held in 'lemon law' cases that the exception to the economic loss rule in *Robinson Helicopter* does not apply to claims of fraudulent inducement by way of omission or concealment."); *Tappana v. Am. Honda Motor Co*., No. CV 21-9046 DSF (PLAx), 2022 WL 2526971, at *7 (C.D. Cal. July 5, 2022) (citing *In re Ford Motor Co*., 483 F. Supp. 3d 838, 848 (C.D. Cal. 2020) ("*Robinson Helicopter* provides that a claim for fraud *by affirmative misrepresentation* may avoid the economic loss rule, but it does not establish any other exception, such as a for a claim for fraud by omission")); *Mosqueda v. Am. Honda Motor Co*., 443 F. Supp. 3d 1115, 1134 (C.D. Cal. 2020) ("Because Plaintiffs concede that they seek only economic damages and premise their fraud claim on alleged omissions, the Court agrees with Honda that Plaintiffs' fraudulent omission claim is barred by the economic loss rule.").[6]   The *Robinson* court explicitly limited its holding, stating it is "narrow in scope and *limited to a defendant's affirmative misrepresentation*s on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." 34 Cal. 4th at 993 (emphasis added).

Accordingly, because Plaintiffs seek only economic damages and concede that their fraud claims are based only on omissions and concealment, the Court finds those claims are barred by the economic loss rule under California law.  The Court therefore grants Defendants' motion to dismiss Plaintiffs' nationwide class claims for fraudulent concealment (Count VI) with prejudice.

---

[6] *See also Gannon v. FCA US*, LLC, No. CV 21-7907 PA (PDX), 2022 WL 3013101, at *3 (C.D. Cal. May 18, 2022) ("Where, as here, Plaintiff only alleges that Defendant concealed facts from her that, if she had known them, would have caused her not to purchase what turned out to be an allegedly defective vehicle, the vast majority of federal courts in California have concluded that, absent affirmative misrepresentations, a plaintiff's recovery is limited to contract damages and the statutory penalties provided under Song-Beverly, and that the economic loss rule precludes fraudulent inducement claims like the one contained in Plaintiff's Complaint.").

b) *State Sub-Classes*

Defendants also argue the economic loss doctrine bars Plaintiffs' fraudulent concealment claims under the laws of Illinois, Wisconsin, Florida, Texas, Kentucky, and Massachusetts.[7] (Mot. at 20). Plaintiffs respond that the economic loss rule does not apply to tort claims that stem from intentional conduct, such as fraudulent inducement, in those states. (Opp. at 22). Though at oral argument, Plaintiffs' counsel conceded they do not allege claims for fraudulent inducement in the FAC. As such, the Court considers whether the economic loss doctrine bars Plaintiffs' sub-class claims of only fraudulent concealment.

i. <u>Illinois:</u> Illinois law recognizes an exception to its economic loss doctrine for claims alleging fraud, including fraudulent concealment claims. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 n.12 (7th Cir. 2012) ("This exception saves [plaintiff's] fraudulent concealment claim but not the negligent misrepresentation or concealment claim"); *see also Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *12 (C.D. Cal. Nov. 23, 2020) (finding economic loss doctrine does not bar fraudulent concealment claim under Illinois law); *In re Chevrolet Bolt EV Battery Litig.*, No. 2:20-CV-13256-TGB-CI, 2022 WL 4686974, at *25 (E.D. Mich. Sept. 30, 2022) (same). Accordingly, the economic loss rule does not bar Plaintiffs fraudulent concealment claim under Illinois law.

ii. <u>Wisconsin:</u> In Wisconsin, "the economic loss doctrine precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations." *Tietsworth v. Harley–Davidson, Inc.*, 2004 WI 32, ¶ 24. The doctrine extends to claims of fraudulent concealment or failure to disclose where—as here—the alleged fraud "ultimately concern[s] the quality of the product sold." *Id.* at 30. Wisconsin courts recognize a fraudulent inducement exception to the economic loss doctrine "where the fraud is extraneous to, rather than interwoven with, the contract." *See Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 52. In other words, to "invoke this

[7] For the reasons stated *infra*, claims of the Nevada sub-class are mooted by Plaintiff Banderas's settlement.

narrow fraud in the inducement exception . . . a plaintiff must show. . . the fraud concerns matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted." *Kaloti Enters., Inc. v. Kellogg Sales Co*., 283 Wis. 2d 555, 585 (Wis. 2005). Here, any alleged fraudulent inducement is part and parcel with the quality of the Class Vehicles for which Plaintiffs contracted. Accordingly, the economic loss doctrine bars Plaintiffs' claim for fraudulent concealment under Wisconsin law. The Court dismisses the Wisconsin sub-class's claim for fraudulent concealment with prejudice.

                iii.    <u>Florida</u>: Under Florida law, the economic loss rule bars Plaintiffs' fraudulent concealment claim. "Florida's Supreme Court did not intend to allow such products liability claims [for fraudulent inducement] to survive" the economic loss rule. *In re Takata Airbag Prod, Liab. Litig.*, 193 F. Supp. 3d 1324, 1339 (S.D. Fla. 2016). Accordingly, this Court joins the majority of courts to conclude that fraudulent inducement is not a recognized exception to Florida's economic loss rule. *See id.* (collecting cases); *Cardenas v. Toyota Motor Corp*., 418 F. Supp. 3d 1090, 1104 (S.D. Fla. 2019); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224–25 (S.D. Fla. 2017) (following *In re Takata* and dismissing fraudulent concealment claims under the Florida economic loss rule). Therefore, the economic loss doctrine bars Plaintiffs' claim for fraudulent concealment under Florida law. The Court dismisses the Florida sub-class's claim for fraudulent concealment with prejudice.

                iv.    <u>Texas</u>: "In Texas, the economic loss rule precludes recovery in tort when the loss complained of is exclusively the subject matter of a contract between the parties." *Guardado v. Deutsche Bank Nat'l Tr. Co*., No. EP-18-CV-368-DB, 2019 WL 7761811, at *3-4 (W.D. Tex. Aug. 30, 2019) (citing *Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). "The economic loss rule has been routinely applied to preclude claims where a plaintiff alleges no damages independent of those suffered as a result of an alleged breach of contract." *Id.* (dismissing fraudulent concealment claim under Texas law).

Plaintiffs cite *Formosa Plastics v. Presidio Engineers*, 960 S.W.2d 41, 47 (Tex. 1998), in which the Texas Supreme Court created an exception to the economic loss rule for fraudulent inducement cases. Plaintiff Little has not alleged claims based on fraudulent inducement. Some courts have extended *Formosa Plastics* to hold that intentional fraud claims are not barred by the economic loss doctrine. *See Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co*., No. 6:16-CV-00315-RP-JCM, 2017 WL 5244285, at *5 (W.D. Tex. Apr. 5, 2017). However, the majority have declined to create such an exception. *See id.*; *see also Guardado*, 2019 WL 7761811, at *3-4; *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 466 (N.D. Tex. 2015) ("[Plaintiff] cannot recover its economic losses under a fraud-based theory . . . unless it can show that [defendants] made the above promises . . . with no intention of performing the act." (internal quotation marks omitted)); *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (affirming dismissal of fraudulent inducement claim as barred by the economic loss rule under Texas law); *Burnley v. Am.'s Servicing Co*., No. CV H-17-1785, 2018 WL 4103226, at *2 (S.D. Tex. June 14, 2018) (dismissing fraud by nondisclosure claim as barred by the economic loss rule). Accordingly, the Court dismisses the Texas sub-class's claim for fraudulent concealment with prejudice.

           v.    <u>Kentucky</u>: Kentucky's "'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). The Kentucky Supreme Court has not determined whether the economic loss doctrine applies to fraud claims. *See Corizon Health, Inc. v. CorrecTek, Inc*., No. 5:17-CV-00035-TBR, 2018 WL 2768883, at *9 (W.D. Ky. June 8, 2018). However, several federal courts applying Kentucky law have applied the economic-loss doctrine to preclude fraudulent misrepresentation claims. *See Ashland Hosp. Corp. v. Provation Med., Inc*., No. 14-444-DLB-EBA, 2014 WL 5486217, at *4 (E.D. Ky. Oct. 29, 2014) ) ("Given the Kentucky Supreme Court's rather broad application

of the economic loss doctrine, as well as the close relationship between fraud and negligent misrepresentation claims, this Court is now confident in predicting the Kentucky Supreme Court would extend the economic loss rule to fraud claims."); *Stapleton v. Hartman & Co., Inc.*, No. CV 17-40-HRW, 2018 WL 1546622, at *3 (E.D. Ky. Mar. 29, 2018); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007) (economic loss doctrine "precludes a plaintiff from recovering under a fraud theory when that claim is intertwined with a breach of contract claim."). Accordingly, the Plaintiffs' fraudulent concealment claims under Kentucky law do not survive the economic loss rule. The Court dismisses the Kentucky sub-class's claim for fraudulent concealment with prejudice

                vi.   <u>Massachusetts</u>: In Massachusetts, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co*., 415 Mass. 393, 613 N.E. 2d 902, 903 (1993). But the economic loss rule "does not apply to 'pecuniary loss incurred as a result of an actionable misrepresentation.'" *Passatempo v. McMenimen*, 461 Mass. 279, 960 N.E. 2d 275, 294 (2012) (quoting *Nota Constr. Corp. v. Keyes Assocs., Inc*., 45 Mass. App. Ct. 15, 694 N.E. 2d 401, 405 n.1 (1998)); *see also Softub, Inc. v. Mundial, Inc*., 53 F. Supp. 3d 235, 239, 260 (D. Mass. 2014) (holding economic loss rule did not bar intentional misrepresentation claim) (citing *Passatempo*, 960 N.E. 2d at 295; *Canal Elec. Co*., 973 F.2d at 998). Here, Defendants have not cited any cases applying the economic loss doctrine to claims based on fraudulent concealment. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' fraudulent concealment claim under Massachusetts law.

        2.   <u>Rule 9(b)</u>

Defendants argue Plaintiffs' claims for fraudulent concealment, as well as those asserted under the WDTPA, FDUTPA, ICFA, and KCPA do not meet the heightened pleading standard. Federal Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint must set forth "the time, place, and specific content of the false representations as well as the

identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud." *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).[8] Although Rule 9(b)'s heightened pleading standard is "somewhat relaxed" in the context of fraudulent omission, "a plaintiff alleging fraudulent omission or concealment must still plead the claim with particularity." *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013).

### a)   *Fraudulent Omissions*

To sufficiently plead a claim for fraudulent omission, plaintiffs must "establish a plausible method of disclosure and . . . establish that they would have been aware of information disclosed using that method . . .." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015). Moreover, "to plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relief on to make her purchase and that failed to include the allegedly omitted information." *See Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) (internal quotation marks omitted).

Defendants argue that Plaintiffs' claims based on a purported failure to disclose are inadequately pleaded. (Mot. at 24). Specifically, Defendants assert that Plaintiffs fail to allege any specific omissions, that Plaintiffs relied upon such omissions, or that Defendants knew they were false when made. Plaintiffs respond that three of the class representatives (Rothmaler, Makie, and Chmura) researched portions of the Hyundai or Kia websites, reviewed "marketing and promotional materials available at the dealership," spoke with sales representatives, and saw the Monroney stickers before purchase. (Opp. at 13 (citing

---

[8] Both parties agree that Rule 9(b) applies to the fraudulent concealment and fraud-based statutory claims, including the WDTPA, FDUTPA, ICFA, and KCPA.

Compl. ¶¶ 33, 46, 59)).[9]   The Court finds these allegations sufficient to survive a motion to dismiss.   In general, "a plaintiff in a fraudulent concealment suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."  *Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (internal quotation marks omitted).   "This is because requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."  *Infoneruo Grp. v. Aetna Life Ins. Co*., No. CV 16-05083-AB (JCX), 2018 WL 5880278, at *2 (C.D. Cal. Sept. 7, 2018) (internal quotation marks and alterations omitted). In *MacDonald v. Ford Motor Co*., 37 F.Supp.3d 1087, 1093 (N.D. Cal. 2014), for example, the court found that the plaintiffs satisfied Rule 9(b):

> Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim.  In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" is the various channels of information through which Ford sold Class Vehicles.

*MacDonald*, 37 F.Supp.3d at 1096.

Plaintiffs' allegations as to Rothmaler, Makie, and Chmura are similar to those alleged in *MacDonald*.  *See also Peckerar v. Gen. Motors, LLC*, No. 18-cv-2153-DMG, 2020 WL 5289919, at *4 (C.D. Cal. May 27, 2020) (denying motion to dismiss based on allegations that, "prior to purchasing their vehicle[, plaintiffs] read the window sticker on the car, read the owner's manual, discussed the braking system with the sales representative who sold the car, and read the sales documents at the dealership without learning that the braking system was defective"); *cf. Davidson v. Apple, Inc*., No. 16-CV-04942-LHK, 2017 WL 976048, at *10 (N.D. Cal. Mar. 14, 2017) (dismissing fraudulent omission claims where plaintiffs did "not allege that they reviewed or were exposed to any information,

---

[9] Plaintiffs do not make similar allegations pertaining to Smith, Little, or the Thompsons. *See* (Compl. ¶¶ 83-112).

advertisements, labeling, or packaging by Defendant").  Accordingly, Defendants' motion to dismiss Plaintiffs Rothmaler, Makie, and Chmura's fraud-based claims under Rule 9(b) is denied.  However, because Plaintiffs have not made the same allegations for Smith (FDUTPA), Little,[10] or the Thompsons (KCPA), Defendants' motion to dismiss their claims is granted without prejudice.

> b)  *Fraudulent Concealment*

"An allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; e.g., that the defendant 'sought to suppress information in the public domain or obscure the consumers' ability' to discover it." *Taragan v. Nissan N. Am., Inc*., No. C 09-3660 SBA, 2013 WL 3157918, at *7 (N.D. Cal. June 20, 2013) (quoting *Gray v. Toyota Motor Sales*, U.S.A., No. CV 08–1690 PSG, 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2012)).  "Mere nondisclosure does not constitute active concealment."  *Browning v. Am. Honda Motor Co*., No. 20-CV-05417-BLF, 2022 WL 824106, at *17 (N.D. Cal. Mar. 18, 2022) (quoting *Herron v. Best Buy Co. Inc*., 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013)).  "[I]f mere nondisclosure constituted 'active concealment,' the duty requirement would be subsumed and any material omission would be actionable."  *Gray*, 2012 WL 313703, at *10.  To plead active concealment, Plaintiffs must point to specific affirmative acts Defendants took "in hiding, concealing or covering up the matters complained of."  *Herron*, 924 F. Supp. 2d at 1176.

Here, Plaintiffs allege that, "when the vehicles were presented to authorized dealerships with excessive oil consumption, Defendants 'advised customers that the excessive oil consumption is normal and that oil should be added to the engine on a regular basis . . ..'" (Opp. at 15 (citing Compl. ¶¶ 216, 225) (emphasis added)).  Courts have found similar allegations of nondisclosure combined with affirmative denials of the defect and denials of free servicing or repairs of defective parts sufficient to survive a motion to dismiss.  *See, e.g.*, *Apodaca v. Whirlpool Corp*., No. SACV 13–00725 JVS (ANx), 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) (defendant's nondisclosure of defect,

---

[10] The Court notes Plaintiffs do not bring a statutory cause of action under Texas law.

combined with allegations that defendant "denied the defect when Plaintiffs called to request repairs or replacement dishwashers" was sufficient to allege active concealment); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134-35 (N.D. Cal. 2010) (plaintiffs sufficiently alleged active concealment when they alleged, in addition to nondisclosure, that defendants told plaintiffs machines at issue "were not defective or denied free service or replacement of the defective parts"). Viewed in the light most favorable to Plaintiffs, the Court denies Defendants' motion to dismiss Plaintiffs' claim for fraudulent concealment for failure to plead with sufficient particularity.

### 3. Pre-sale knowledge

Defendants argue that Plaintiffs have failed to adequately plead Defendants knew of the defect at the time of sale or lease. Plaintiffs do not dispute that their fraudulent omission and fraudulent concealment claims, as well as their statutory fraud claims under WDTPA, ICFA, and KCPA, require sufficient pleading that Defendants knew of the purported defect at the time of Plaintiffs' transactions.[11] *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("[P]laintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss."). A defendant's knowledge, however, is not subject to Rule 9(b) and may be pleaded generally. Fed. R. Civ. P. 9(b). "[T]o successfully allege a manufacturer was aware of a defect, [a] plaintiff is typically required to allege how the defendant obtained knowledge of the specific defect prior [to] the plaintiff's purchase of the defective product." *Stewart v. Electrolux Home Prods., Inc.*, 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018).

---

[11] *See Rockford Mem'l Hosp. v. Havrilesko*, 368 Ill. App. 3d 115 (2006) (under ICFA "the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment"); *MH Imaging, LLC v. K&K Holdings, LLC*, 374 Wis. 2d 436 (2017) ("communication, which [Defendants] knew was false, qualified as a misrepresentation to the public for purposes of [WDTPA]"). Defendants do not cite a case requiring the same degree of pre-sale knowledge under the KCPA. Accordingly, the Court does not consider the impact of Plaintiffs' allegations regarding Defendants' knowledge of the Oil Consumption Defect on Plaintiffs' KCPA claim.

Plaintiffs allege "Defendants have known about the excessive oil consumption of the Class Vehicles for years." (Compl. ¶ 10). Plaintiffs point to the following facts to demonstrate Defendants' purported pre-sale knowledge of the Oil Consumption Defect: (1) National Highway Traffic Safety Administration ("NHTSA") complaints, (*Id.* ¶¶ 197-201); (2) consumer complaints on internet forums, (*Id.* ¶ 202-207); (3) two Technical Service Bulletins ("TSBs") concerning oil consumption, (*Id.* ¶¶ 183-196); (4) Hyundai's NU Engine Recall 203 on June 11, 2021, (*Id.* ¶¶ 179-182); and (5) internal pre-sale testing, (*Id.* ¶¶ 208-212). Plaintiffs first purchased a vehicle on July 6, 2017. (*Id.* ¶ 98). The Court therefore analyzes whether Plaintiffs sufficiently alleged Defendants knew about the Oil Consumption Defect on or before July 2017. For the reasons stated below, the Court finds Plaintiffs have not alleged Defendants had the requisite knowledge to state a claim of fraudulent concealment or statutory claims under the WDTPA, ICFA, or KCPA.

### a) *NHTSA Complaints*

Defendants argue the NHTSA complaints submitted by Plaintiffs are insufficient to raise an inference of knowledge. The Ninth Circuit has held that an "unusually high" number of consumer complaints may suffice to establish knowledge, such that the manufacturer would be on notice of a specific problem. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017).[12] In *Williams*, the Ninth Circuit found plaintiffs adequately pleaded the defendants' knowledge where complaints regarding the outboard motor corrosion "were so frequent that individual Customer Relations supervisors personally handled as many as 40 or 50 different consumer complaints, or more, regarding the issue, which was an *unusually high number of complaints* for Yamaha to receive

---

[12] The Court notes that an "unusually high" number of consumer complaints may be sufficient—but is not necessary—to demonstrate knowledge. *See, e.g.*, *Ford v. Hyundai Motor Am.*, No. 8:20-cv-00890-FLA (ADSx), 2021 WL 7448507, at *25 (C.D. Cal. Oct. 5, 2021).

regarding corrosion this soon in the life of the engines."   851 F.3d at 1026. (internal quotation marks omitted, emphasis added).

Here, Plaintiffs cite approximately 400 NHTSA complaints to Defendants over a 12-year period.  (Compl. ¶ 199).  Over that time period, Defendants have sold more than ten million vehicles in the United States. (*Id.* ¶ 172).  The Court agrees with Defendants that the approximately 400 complaints is quantitatively insufficient without some indicia of how those complaints represent an "unusually high" amount.  "Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints." *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018); *Nickerson v. Goodyear Tire & Rubber Corp.*, No. 8:20-cv-00060-JLS-JDE, 2020 WL 4937561, at *9 (C.D. Cal. June 3, 2020) (finding over 100 NHSTA consumer complaints related to Marathon Tires insufficient to impute knowledge).  Critically, the 400 complaints are not limited to the Class Vehicles.  As counsel for Defendants noted at oral argument, many of the complaints do not even specify which model they relate to, and many models have zero complaints. Moreover, a significant percentage—226 of 384—post-date Plaintiffs' purchases and therefore are irrelevant to demonstrate pre-sale knowledge. *See Browning*, 2022 WL 824106, at *16 (finding NHTSA "complaints were insufficient because they largely post-date each Plaintiff's purchase of his or her vehicle"); *cf. Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *3 (N.D. Cal. July 7, 2015) (finding sufficient inference of knowledge based on NHTSA complaints where Ford "produced a database containing 1,173 complaints" regarding loss of power steering, nine of which allegedly described "incidents that resulted in a crash.").

The Court finds *Sloan v. General Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ("*Sloan I*") and *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 877 (N.D. Cal. 2018) ("*Sloan II*") instructive.  In *Sloan I*, the court found plaintiffs' allegations of 81 complaints over the course of seven years to be insufficient to show knowledge of the alleged defect.  2017 WL 3283998, at *7.  In contrast, the court in

*Sloan II* found the plaintiffs demonstrated pre-sale knowledge where they presented a "significantly larger number" or complaints—532—and, critically, alleged "that the number of complaints far exceeds the number of similar complaints for competitor vehicles." 287 F. Supp. 3d at 866, 866 n.10. The court explained that, "unlike before, the Court now has a baseline upon which to conclude that Plaintiffs have plausibly pled an unusual number of complaints." *Id.* at 866.

Plaintiffs' allegations here are more like those in *Sloan I* than *Sloan II*. In their opposition and at oral argument, Plaintiffs offer to submit additional NHTSA complaints. However, Plaintiffs have not explained how many additional complaints they would submit, or how additional complaints would tip the scale towards a statistically significant number like in *Sloan II*. Accordingly, the Court finds that Plaintiffs' allegations of NHTSA complaints are insufficient to raise an inference of knowledge under the plausibility standard of *Iqbal* and *Twombly*.

b) *Consumer Complaints*

Plaintiffs contend that complaints on "heavily trafficked internet forums for car owners should have given Hyundai and Kia knowledge of the Oil Consumption Defect." (Compl. ¶¶ 201-207). However, an allegation that a defendant "should have" known is not sufficient for liability. *See Wilson*, 668 F.3d at 1145 (plaintiff must allege that defendant "was aware" of a defect at the time of sale for exclusive knowledge). "Awareness of a few customer complaints . . . does not establish knowledge of an alleged defect." *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011); *see also Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) ("[C]omplaints posted on Apple's consumer website merely establish the fact that some consumers were complaining."). Plaintiffs have not alleged Defendants actually tracked these complaints. *See Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF (PJWx), 2019 WL 3059931, at *12 (C.D. Cal. May 29, 2019) ("Plaintiffs failed to make any allegations that Honda ever actually tracked these complaints.") Moreover, the "Ninth Circuit has specifically contrasted situations where a

plaintiff made an adequate showing of knowledge with those where the allegation of knowledge was merely based on an 'insufficiently small number of complaints, complaints posted in forums unrelated to the defendant, complaints made after the sale dates, or some combination of these circumstances.'" *Id.* (quoting *Williams*, 851 F.3d at 1027). Plaintiffs have not alleged facts establishing that these consumer complaints were "more than a blip on [Defendants'] radar." *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2021 WL 62502, at *6 (C.D. Cal. Jan. 4, 2021) (internal quotation marks omitted).

### c)   *Technical Service Bulletins*

Plaintiffs allege two of Defendants' oil consumption TSBs—the Kia oil consumption TSB 222, issued in December 2020, and Hyundai's oil consumption TSB 21-EM-003H, issued in March 2021—suggest Defendants were aware of the Oil Consumption Defect in July 2017. (Opp. 17-18; Compl. ¶ 183). Defendants argue that too much time (two and a half years) had passed from the Plaintiffs' first purchase of a Kia vehicle to Defendants issuing TSB 222 to raise an inference of pre-sale knowledge. Plaintiffs respond that Defendants TSBs "were proceeded by an accretion of knowledge" by Defendants. (Opp. at 17 (citing *Philips*, 2015 WL 4111448, at *9)). In *Ford*, the court accepted a claim of pre-sale knowledge where the defendant issued a TSB in May 2011 and the sale occurred in January 2010. 2015 WL 4111448, at *3-4. Likewise, in *In re MyFord Touch Consumer Litigation*, the defendant issued multiple TSBs in 2012 and the plaintiffs purchased or leased their vehicles beginning in 2011. 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014). Here, the Court finds that two and a half years is too large a period, coupled with the additional reasons below, to demonstrate pre-sale knowledge.

Defendants also argue that neither TSB explicitly addresses the purported defect at issue here: the "piston ring assembly and cylinder coating." (Mot. at 28 (citing Compl. ¶ 163)). Rather, Defendants claim the TSBs are merely "generic oil consumption diagnostic tests" without mention of any issue with the piston ring. Plaintiffs respond that the TSBs "require combustion chamber cleaning and instructs dealers to remove deposits on the piston rings and cylinders" consistent with Plaintiffs' allegations that engine oil

improperly bypasses the piston rings and enters the combustion chamber.  (Opp. at 17).
The Court agrees with Defendants that a general instruction for cleaning the combustion
chamber and removing excess deposit is not specific enough to raise a reasonable inference
that Defendants knew of the Oil Consumption Defect years earlier.

For example, in *Sloan II*, the plaintiffs alleged that General Motors "issued two TSBs
specifically related to two of the components they allege contributed to the
overconsumption defect."  287 F. Supp. 3d at 866.  In the TSBs General Motors
acknowledged the "system's oil pressure relief valve contributed to oil consumption and
carbon buildup on the piston rings" and that the "system contributed to oil consumption."
*Id.*  Likewise, in *Philips*, 2015 WL 4111448, at *9, the plaintiffs alleged two TSBs that
explicitly addressed the same defect related to an issue with the vehicles' steering.  By
contrast, in *Grodzitsky v. Am. Honda Motor Co., Inc*., No. 2:12–cv–1142–SVW–PLA,
2013 WL 690822 at *2 (C.D. Cal. Feb. 19, 2013), the court found plaintiffs had not
adequately alleged knowledge because the three TSBs only discussed general problems
with windows and did not explicitly mention the alleged window regulator defect.

Here, like in *Grodzitsky*, it is unclear how a general instruction to clean engine oil
would reasonably imply that Defendants knew of the alleged Oil Consumption Defect with
the piston rings.  *See Fisher v. Honda N. Am., Inc*., No. CV 13-09285 JAK, 2014 WL
2808188 (C.D. Cal. June 12, 2014) (finding TSBs did not support a finding of knowledge
because it was "not clear how the TSBs relate to the alleged defect" despite both
referencing issue with how car doors lock).  In sum, Plaintiffs have not shown how the
TSBs, issued well after the Plaintiffs purchased their vehicles and providing instruction to
clean residue from the combustion chamber, demonstrates Defendants had the requisite
knowledge.  *Sloan I*, 2017 WL 3283998, at *7 (granting motion to dismiss because the
TSBs addressed only "the general problem of excessive oil consumption, and does not
mention the alleged specific defect").

### d)    *Hyundai's Recall 203*

Plaintiffs claim that Hyundai's Recall 203 shows Defendants knew about the Oil Consumption Defect.  The Recall 203 occurred on or about June 11, 2021, and specifically recalled the 2.0 Nu MPI Engine due to a faulty piston oil ring.  (Compl. ¶ 179).  Despite that Recall 203 occurred in June 2021—nearly four years *after* Plaintiffs' first purchase—Plaintiffs argue the timing is inconsequential because a recall is "proceeded by an accretion of knowledge" by defendants.  (Opp. at 17 (quoting *Philips*, 2015 WL 4111448, at *9)).  Defendants respond that Recall 203 "deals with a *wholly different engine* from the engines in plaintiffs' vehicles."  (Mot. at 27; Reply at 9).  Indeed, Plaintiffs acknowledge as much.  In the Complaint, Plaintiffs note that "Hyundai and Kia have yet to recall the Class Vehicles to repair the Oil Consumption Defect."  (Compl. ¶ 11).  The Recall 203, instead, "only covers three later models of Hyundai vehicles."  (*Id.* ¶ 11 n.4).  Missing from the Complaint, however, is any allegation that Hyundai's Recall 203 of the 2.0 Nu MPI Engine dealt with a similar defective part that exists in the Class Vehicles.  Even if the recall addresses a defect similar to the one alleged in the Complaint, it is of no import if the defective part is absent from the Class Vehicles.  *See Pascal v. Nissan N. Am., Inc.*, No. 8:20-cv-00492-JLS-JDE, 2022 WL 2784393, at *9 (C.D. Cal. June 8, 2022) (finding similar allegations insufficient where "none of the recall notices or bulletins . . . involve the Class Vehicles" and plaintiffs failed to "describe how the identified recall notices [ ] establish knowledge of a common defect as to Class Vehicles"); *Sloan II*, 287 F. Supp. 3d at 866 ("all the vehicles are equipped with the same allegedly defective engine and thus bolster the plausibility of inferring Defendant's general knowledge of the over-consumption problem associated with that engine").

In their Opposition, Plaintiffs recognize that the recall dealt with different engines, yet fail to explain how the Recall 203 nonetheless demonstrates knowledge of the Oil Consumption Defect in the *Class Vehicles*.  *Cf. MacDonald.*, 37 F. Supp. 3d at 1093 ("Although the first TSB related only to the 2005 Ford Escape Hybrids, it is plausible that Ford knew of the defect in other model years because Plaintiffs allege the allegedly

defective part in their vehicles is the same."); *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1056 (C.D. Cal. 2020) ("the Court does not find it material that the [technical tip] addressed only Jetta vehicles while some Plaintiffs have Tiguan vehicles because Plaintiffs allege *both models had the same Defect with the same Transmission*" (emphasis added)). The Court also finds it significant that the Recall 203, although it dealt with a different engine, occurred four years *after* Plaintiffs' first purchase. *Cf. Acedo v. DMAX, Ltd.*, No. CV 15-02443 MMM(ASX), 2015 WL 12912365, at *13 (C.D. Cal. July 31, 2015) (holding that, although allegations of pre-sale knowledge related to an "earlier version" of the motor at issue, "[t]he fact that defendants observed [the defect] while testing the [earlier motor] plausibly suggests that they were on notice of the" defect in the motor at issue). As such, Hyundai's Recall 203 does not support an inference that Defendants had pre-sale knowledge the Class Vehicles contained the Oil Consumption Defect.

e)    *Pre-Sale Durability Testing*

Plaintiffs allege that Defendants, as experienced manufacturers, "conduct tests, including pre-sale durability testing, to verify that the vehicles it sells are free from defects . . .." (Compl. ¶ 208). Plaintiffs assert that Defendants were obligated to test the Class Vehicles' exhaust emissions system's durability under the Clean Air Act regulations, and those tests would have somehow revealed the Oil Consumption Defect. (*Id.* ¶¶ 209, 210). Plaintiffs allege that, through these quality control measures, "Hyundai and Kia knew or should have known of the Oil Consumption Defect." (*Id.* ¶ 211). Defendants argue that conclusory allegations of pre-sale testing are insufficient to imply knowledge. (Mot. at 28). The Court agrees with Defendants.

In *Wilson*, the Ninth Circuit found similar allegations insufficient to support the inference that a defendant knew about a design defect at the time of sale. 668 F.3d at 1147. The plaintiffs alleged the defendant knew about an alleged design defect because they had "access to the aggregate information and data regarding the risk of overheating" and had received fourteen customer complaints—twelve undated, and two after the sales in question took place—about the defect. *Id.* The Ninth Circuit found the allegation that the

defendant knew of the defect because it had access to aggregate data "speculative" because it failed to "suggest how any tests or information could have alerted [the defendant] to the defect." *Id.*; *see also Browning*, 2022 WL 824106, at *15 (finding general allegations of pre-sale testing do not plausibly plead knowledge, reasoning *inter alia* that "should have known" is not sufficient for liability). Courts that have held otherwise based their reasoning on much more robust allegations of pre-sale testing than in the Complaint. *Cf. Velasco v. Chrysler Grp. LLC*, No. CV 13-08080 DDP VBKX, 2014 WL 4187796, at *1 (C.D. Cal. Aug. 22, 2014) ("Because of the history of recalls, Plaintiffs allege, Chrysler was on the lookout for early indicia of problems with the TIPM 7 and tracked potential TIPM-related issues through exhaustive pre-release testing, including putting 7 million miles on multiple 2011 Grand Cherokee test cars before production. Plaintiffs allege that, given the speed and frequency with which the TIPM 7 defect typically becomes apparent, it is not plausible that this preproduction testing would not have alerted Chrysler to the existence of the TIPM defect."); *MacDonald*, 37 F. Supp. 3d at 1093 (finding sufficient "allegations that Ford had access to pre-production testing, pre-release testing data, early consumer complaints made exclusively to Ford, high levels of repair orders and warranty reimbursements, *testing conducted in response to complaints*, replacement part sales data, and aggregate data from Ford dealers (emphasis added)); *Parrish*, 463 F. Supp. 3d at 1055 (finding allegations that the defendant "was provided data from consumers and dealerships *identifying the alleged Defect*" sufficient to support an inference of knowledge (emphasis added));

Accordingly, the Court finds that Plaintiffs' allegations regarding pre-sale durability testing do not lead to a reasonable inference, when viewed in a light most favorable to Plaintiffs, that Defendants knew of the Oil Consumption Defect. *See, e.g.*, *Williams v. Yamaha Motor Corp., U.S.A.*, No. CV 13-05066 BRO (VBKx), 2015 WL 13626022, at *11 (C.D. Cal. Jan. 7, 2015) (allegations must enable the court to "draw the inference that Defendant's *opportunity* to learn about this alleged defect before selling their engines to the public necessarily means that they *did* learn about the defect" (emphasis in original));

-26-

*cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1192 (C.D. Cal. 2010) (finding that a complaint adequately alleged that defendants had knowledge of a defect upon alleging that it knew of "NHTSA's findings of a 400% increase in 'Vehicle Speed' complaints in [defendant's cars], 37,000 concealed consumer complaints, secret Field Technical Reports and Dealership Report, issues with the electronic throttle actuator assemblies shared only with dealers and later NHTSA, eliminated references to [its cars'] speed control problems, concealed 'surging' complaints, and received consumer complaints post-recall, demonstrating the problem has not been fixed").

In sum, Plaintiffs have not sufficiently alleged Defendants knew of the Oil Consumption Defect as of July 2017.  Therefore, the Court dismisses without prejudice Plaintiffs' claims for fraudulent concealment not barred by the economic loss doctrine (Count VI) and remaining statutory claims under the WDTPA (Count XII), ICFA (Count XVI), KCPA (Count XVII).

### C.    Availability of Equitable Relief

Plaintiffs seek equitable relief in the form of unjust enrichment.  (Compl. ¶¶ 272-277).  Defendants argue that Plaintiffs are barred from seeking equitable relief because they have an adequate remedy at law—monetary damages.  (Mot. at 30).

It "is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (internal quotation omitted).  "Unjust enrichment is an equitable rather than a legal claim." *McKesson HBOC, Inc. v. NY State Common Retirement Fund, Inc*., 339 F.3d 1087, 1091 (9th Cir. 2003).  It follows that "unjust enrichment applies only in the absence of an adequate remedy at law." *Zapata Fonseca v. Goya Foods Inc*., No. 16-CV-02559-LHK, 2016 WL 4698942, at \*7 (N.D. Cal. Sept. 8, 2016).  Moreover, "even if a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because

equitable remedies are subject to traditional equitable principles unaffected by state law." *Sonner*, 971 F.3d at 841.

Plaintiffs cite *Oddo v. United Technologies Corp.*, No. 8:15-cv-01985-CAS(Ex), 2022 WL 577663 (C.D. Cal. Jan. 3, 2022). That case is distinguishable. There, the plaintiff alleged he did *not* have an adequate remedy at law "because absent equitable relief, he cannot recover the full cost to repair his air conditioner" because the cost had increased since the time of purchase. *Id.* at *18. Here, in contrast, Plaintiffs do not allege that any remedy available at law would be inadequate to make them whole. Courts in this district routinely grant motions to dismiss claims for equitable relief under similar circumstances.[13] *See, e.g.*, *Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628, at *9 (C.D. Cal. May 5, 2021); *Clark v. Am. Honda Motor Co.*, No. CV 20-03147 AB (MRWx), 2021 WL 4260232, at *4 (C.D. Cal. Sept. 14, 2021); *Audrey Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159, at *2 (C.D. Cal. Feb. 10, 2021). Accordingly, Defendants' motion to dismiss Plaintiffs' claims for equitable relief, including unjust enrichment (Count IV) and any available equitable relief under the FDUTPA and KCPA, is granted without prejudice.

### D. Plaintiffs' Warranty Claims

#### 1. Express Warranties

Defendants argue that Plaintiffs' claim for breach of express warranty fails for two reasons: first, Plaintiffs have not sufficiently identified the terms of the applicable warranty; and second, Plaintiffs have not alleged facts demonstrating they relied on the warranty.[14]

---

[13] Plaintiffs also cite *Tappana v. Am. Honda Motor Co.*, No. CV 21-9046 DSF (PLAx), 2022 WL 2526971 (C.D. Cal. July 5, 2022). The plaintiffs in that case, unlike Plaintiffs here, "allege[d] they lack an adequate remedy at law for the equitable relief they seek." 2022 WL 2526971, at *9. Because Plaintiffs do not claim that monetary relief is inadequate, they may not seek equitable relief. *See Sonner*, 971 F.3d at 844.

[14] Defendants also argue that Plaintiff Little exceeds the alleged express warranty limits. Specifically, Ms. Little did not need her engine replaced until reaching 125,468 odometer miles, which exceeds the 100,000-mile warranty. (Compl. ¶¶ 213, 214). Plaintiffs respond

-28-

"To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Asghari v. Volkswagen Grp. of Am., Inc*., 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013). "The plaintiff must allege the 'exact terms of the warranty.' " *Cadena v. Am. Honda Motor Co*., No. CV 18-4007-MWF (PJWx), 2018 WL 8130613, at \*7 (C.D. Cal. Nov. 14, 2018) (quoting *Nabors v. Google, Inc.*, No. 5:10-CV-03897 EJD PSG, 2011 WL 3861893, at \*4 (N.D. Cal. Aug. 30, 2011)); *Kearney v. Hyundai Motor Am*., No. SACV09-1298-JST MLGX, 2010 WL 8251077, at \*7 (C.D. Cal. Dec. 17, 2010) ("[I]n order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty[.]"). And when the parties are not in privity, "California law requires a showing that a plaintiff relied on an alleged warranty." *Asghari*, 42 F. Supp. at 1333.

As to Defendants' first argument, Plaintiffs contend they have satisfied their burden by alleging the "salient terms of the relevant warranties," including the 10-year/100,000-

---

that Ms. Little's vehicle stalled three years after she purchased it and while she had 92,983 miles on the odometer, placing it within the 10-year/100,000-mile warranty. (Opp. at 25). "The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of breach of express warranty claim even though plaintiff alleged the defect "existed before the warranty expired, and that DaimlerChrysler had knowledge of the defect at the time of sale"). The Court agrees with Defendants. Plaintiff Little has not alleged she needed a repair for a defect covered by her warranty within the warranty period that Defendants did not address. *Apodaca v. Whirlpool Corp*., 2013 WL 6477821, at \*9 (C.D. Cal. Nov. 8, 2013) ("Manufacturers are 'not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period. Rather, the question is whether [a plaintiff] sought repairs, refunds or replacements and, if so, whether [the manufacturer] responded appropriately under the warranty.'"); *McCarthy v. Toyota Motor Corp*., No: 8:18-cv-00201-JLS-KES, 2018 WL 6318841, at \*8 (C.D. Cal. Sept. 14, 2018) (finding that Plaintiffs failed to allege a breach of express warranty claim where Plaintiffs "allege[d] no facts concerning presentment within the applicable warranty period.").

mile Powertrain Limited Warranty and a 5-year/60,000-mile New Vehicle Limited Warranty. (Opp. at 23-24; Compl. ¶¶ 213-14, 222-23). Plaintiffs allege the Powertrain Warranty covers the "engine, transmission, and drive systems," and therefore "is the applicable warranty related to the Oil Consumption Defect." (Compl. ¶¶ 214, 223; Opp. at 24). However, this hollow statement, without more, fails to identify any express term of the warranty that was allegedly breached. *See Pelayo*, , 2021 WL 1808628, at *7 (dismissing express warranty claims for failure to allege the exact terms of the warranty where the plaintiffs alleged that the vehicles were covered by warranties lasting up to 10 years or 100,000 miles, and that these warranties "covered defective components arising out of defects in materials and/or workmanship, including the Defect"); *Pascal, Inc*., 2021 WL 8441763, at *10  (dismissing express warranty claim where the plaintiffs alleged the vehicles were "covered by a largely uniform warranty that provides broad coverage for three years or 36,000 miles and powertrain coverage for five years or 60,000 miles"); *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2014 WL 10988343, at *8 (C.D. Cal. Dec. 29, 2014); (dismissing express warranty claim where the "allegations do not allege with adequate specificity what Defendant promised or represented with respect to the Brake Switch Defect in the Class Vehicles"). As such, Plaintiffs' claims for breach of express warranty (Count II) is dismissed.

As to Defendants' second argument, the Court agrees that Plaintiffs have not sufficiently alleged reliance on an express warranty. In their opposition, Plaintiffs do not argue otherwise. (Opp. at 24-25). Instead, Plaintiffs contend that such a showing is unnecessary under California law, citing to *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 969 (N.D. Cal. 2014). The Court acknowledges the split in authority on whether reliance is necessary in the absence of privity to state a claim for breach of express warranty. *See, e.g*., *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig*., 393 F. Supp. 3d 745, 762 (N.D. Ill. 2019) (collecting cases and explaining three different approaches taken in recent years by federal and California state courts with respect to whether reliance is required to assert a breach of express warranty claim absent privity);

*compare In re MyFord Touch.*, 46 F. Supp. 3d at 972-74 (finding reliance not required in this context), *with Asghari*, 42 F. Supp. 3d at 1333-35 (reaching the opposite conclusion).

Nevertheless, Plaintiffs cannot state a claim for breach of express warranty in the absence of allegations that they were at least exposed to them. *Nickerson v. Goodyear Tire & Rubber Corp.*, No. 8:20-cv-00060-JLS-JDE, 2020 WL 4937561, at *5 (C.D. Cal. June 3, 2020) (dismissing express warranty claim where the plaintiff "has made no allegation that he was ever exposed to the statements concerning the express warranty in Goodyear's Tire and Care Guide, and relied thereon"); *In re Toyota*, 754 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) ("Plaintiffs cannot base a claim on [an express warranty created by representations in advertisements] in the absence of allegations that they were exposed to them."); *Peterson v. Mazda Motor of Am., Inc.*, No. SACV 13–1972–DOC (ANx), 2014 WL 12817797, at *5 (C.D. Cal. July 3, 2014) (dismissing claim for breach of express warranties due to "absence of allegations that [plaintiffs] were exposed to them."). Accordingly, Plaintiffs cannot state a claim for breach of express warranties because they have not alleged whether they ever saw the express warranties.[15]

### 2. Implied Warranties

Defendants argue Plaintiffs' implied warranty claims under the laws of Illinois and Florida fail for lack of privity.[16]  Plaintiffs contend privity is satisfied because Plaintiffs

---

[15] The Court notes Plaintiffs may not be able to allege they ever saw Defendants' express warranties given their statement that "Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale or lease, the written warranty containing the purported exclusions and limitations of remedies." (Compl. ¶ 271).  Nevertheless, the Court grants Plaintiffs leave to amend to the extent Plaintiffs reviewed other pertinent portions of the written warranties that formed the basis of their bargain with Defendants.

[16] As noted *supra*, the Thompsons and Chmura concede their implied warranty claims under Kentucky and Wisconsin law, respectively.  (Opp. at 2 n.1).  And Banderas's claims are mooted by his settlement and release.  (Morgan Decl. ¶ 2, Ex. 1).  *See Shaw v. Jar-Ramona Plaza, LLC*, No. 5:13–cv–01563–CAS(SPx), 2015 WL 1275294, at*6 (C.D. Cal. Mar. 16, 2015) ("While standing is established as of the filing of the suit, a claim may become moot even after filing if a litigant does not continue to have a personal stake in the

Rothmaler (Illinois) and Smith (Florida) are intended third-party beneficiaries.  (Opp. at 19-21).  The Court addresses each in turn.

a)   <em>Florida Law</em>

The "overwhelming weight of Florida law" indicates that a plaintiff vehicle purchaser must purchase the vehicle directly from the defendant in order to establish contractual privity to state a breach of implied warranty claim.  *Padilla v. Porsche Cars North Am., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019).  *See, e.g.*, *Johnson v. Nissan N. Am., Inc.*, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) ("Modern Florida courts consistently hold in actions by consumers against vehicle manufacturers that 'privity of contract is required to maintain an action for breach of implied warranty,' and have not recognized a third-party beneficiary exception." (quoting *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008)); *Cerasani v. Am. Honda Motor Co.*, 916 So. 2d 843, 847 (Fla. Dist. Ct. App. 2005); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005).  However, as Plaintiffs point out, there is another line of cases that have applied an exception to this rule for third-party beneficiaries of a transaction between a vehicle manufacturer and its agent dealers.  *See, e.g.*, *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014)

"Without a decision by the Florida Supreme Court, the Court 'must predict how the [Supreme] Court will decide the issue, based on decisions of [Florida] courts, decisions from other jurisdictions, treatises and restatements.'"  *Rojas v. Am. Honda Motor Co., Inc.*, No. CV 19-10136-DMG (FFMx), 2020 WL 8515177, at *4 (C.D. Cal. Nov. 30, 2020) (quoting *Matsuura v. Alston & Bird*, 166 F.3d 1006, 1008 (9th Cir. 2009)).  The Eleventh Circuit recently held "[u]nder Florida law, a consumer must enjoy privity of contract with a supplier to recover for breach of an implied warranty."  *Id.* (quoting *Kelly v. Lee Cnty. RV Sales Co.*, 819 F. App'x 713, 717 (11th Cir. 2020) (internal quotation marks omitted)); *see also Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 895 (11th Cir. 2006) (under

---

outcome of the lawsuit that is likely to be redressed by a favorable decision.") (internal quotation marks omitted).

Florida law, "the absence of privity between [plaintiff] and [defendant] is dispositive: [plaintiff's] claim of breach of implied warranty fails as a matter of law"). Accordingly, the Court follows the Eleventh Circuit and majority of Florida courts to conclude that Florida law does not recognize a third-party beneficiary exception to the privity of contract requirement for a breach of implied warranty claim. Plaintiff Smith's implied warranty claims under Florida law are therefore dismissed. *See Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20-cv-05889-VAP (ADSx), 2021 WL 4894299, at *6 (C.D. Cal. Aug. 27, 2021).

b)    *Illinois Law*

Illinois law applies the privity requirement in a similar way to Florida. "Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker v. Porsche Cars N. Amer., Inc*., 353 F.3d 516, 525 (7th Cir. 2003); *see Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 832 (2004) (applying Illinois law and affirming that, "[i]n order for a plaintiff to file a claim for economic damages under the UCC for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller." (citations omitted)). Although Plaintiffs rely on *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016), which recognized a third-party beneficiary exception, courts applying Illinois law overwhelmingly refuse to follow *Elward*'s "reasoning because Illinois state courts are clear on Illinois law"—a plaintiff "may not argue that she is a third-party beneficiary of [a defendant's] contracts with its dealers; Illinois law recognizes no such exception to the privity requirement." *Johnson*, 2018 WL 905850, at *5; *see also Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004) ("Although this vertical privity requirement has been challenged on a number of occasions, our supreme court has consistently declined to abolish the doctrine in cases where purely economic damages are sought."). Accordingly, Plaintiff Rothmaler's implied warranty claim under Illinois law is dismissed.

### 3. Magnuson-Moss Warranty Act

Defendants argue Plaintiffs cannot sustain an express or implied warranty claim under the MMWA because they have not provided the required statutory notice. *See* 15 U.S.C. § 2310(e) (requiring notice providing opportunity to cure). Plaintiffs claim they provided notice to Defendants on March 18, 2022. (Opp. at 29 (citing Compl. ¶ 251 ("Defendants were provided notice of the claims raised by Plaintiffs and was [sic] afforded a reasonable opportunity to cure. Defendants failed to cure in that they have not offered an effective repair to Plaintiffs and consumers for the Oil Consumption Defect."))). However, Plaintiffs' allegations amount to a restatement of the MMWA's statutory requirements. *Twombly* and *Iqbal* explicitly reject such allegations, which "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *See Iqbal*, 556 U.S. at 681 (citing *Twombly*);[17] *see also Arakelian v. Mercedes-Benz USA, LLC*, No. CV 17-6240 TJH (RAOx), 2018 WL 6422649, at *3 (C.D. Cal. June 4, 2018) (explaining that, to bring a viable MMWA class action claim, "each plaintiff must notify the warrantor that the plaintiff is going to initiate a suit on behalf of a class"); *Bhatt v. Mercedes-Benz USA, LLC*, No. CV 16-3171 TJH (RAOx), 2018 WL 5094932, at *4 (C.D. Cal. Apr. 16, 2018). Moreover, Plaintiffs' "claims under the Magnuson-Moss Act stand or fall with [their] express and implied warranty claims under state law. *Clemens*, 535 F.3d at 1022, 1022 n.3 ("the federal claims hinge on the state law warranty claims"). For the reasons stated above, Plaintiffs have not stated a claim for breach of either express or implied warranties. Accordingly, Plaintiffs' claim for violations of the MMWA (Count I) is dismissed.

---

[17] The only allegation regarding notice on March 18, 2022 pertains to Plaintiff Cho, (Compl. ¶ 305), who no longer has standing in this case.

1    **E.    State Law Claims**

2        1.    <u>Dismissal of Representative Plaintiffs</u>

3        Plaintiff Cho dismissed his five claims under California law. (ECF No. 42).  Plaintiff

4    Banderas, the only plaintiff to sue under Nevada law, settled his claims.  (ECF No. 46, Ex.

5    1).  And Plaintiff Makie voluntarily conceded her MCPA claim.  (Opp. at 2 n.1).  Together,

6    Cho, Banderas, and Makie were the only named plaintiffs representing the putative classes

7    from California, Nevada, and Massachusetts, respectively.   When those named plaintiffs

8    voluntarily dismissed, settled, or conceded their claims against Defendants, "their claims

9    became  moot,  thereby  depriving  the  Court  of  subject  matter  jurisdiction."   *Bernor v.*

10   *Takeda Pharm. Am., Inc.*, No. LACV 12-04856, 2018 WL 588563, at *5 (C.D. Cal. Jan.

11   25, 2018) (citing *Employers-Teamsters Loc. Nos. 175 & 505 Pension Trust Fund v. Anchor*

12   *Cap. Advisors*, 498 F.3d 920, 924 (9th Cir. 2007)).  Indeed, "the majority of courts . . . have

13   concluded that when 'a representative plaintiff is lacking for a particular state, all claims

14   based on that state's laws are subject to dismissal.'"   *Mollicone v. Universal Handicraft,*

15   *Inc.*, No. 2:16-cv-07322 CAS (MRWx), 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017)

16   (quoting *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal.

17   2009)).

18        There has not been a request to substitute new class representatives for those putative

19   classes.  Further, "because those classes have not been certified, the substitution of class

20   representatives, if requested, may not have been permitted."  *In re ZF-TRW Airbag Control*

21   *Units Prod. Liab. Litig.*, No. LA ML19-02905 JAK (FFMx), 2022 WL 522484, at *65-66

22   (C.D. Cal. Feb. 9, 2022).  *See Skilstaf, Inc. v. CVS Caremark Corp.*, No. C 09-02514 SI,

23   2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010) ("Ordinarily, substitution of class

24   representatives is permitted only after a class has already been certified. This is because,

25   when the named plaintiff's claim is dismissed at the pleading stage, there is no longer an

26   Article III 'case or controversy' between the parties, and the action must be dismissed."

27   (citations omitted)), *aff'd*, 669 F.3d 1005 (9th Cir. 2012); *Hitt v. Ariz. Beverage Co.*, No.

28   08-cv-809 WQH-POR, 2009 WL 4261192, at *5 (S.D. Cal. Nov. 24, 2009) ("When

deciding whether substitution of plaintiffs may be permitted after the named plaintiff's claims are voluntarily dismissed or otherwise become moot, the paramount consideration is whether the putative class has been certified.").

For the foregoing reasons, all claims brought by Cho on behalf of the putative California class, those brought by Banderas on behalf of the putative Nevada class, and the MCPA claim brought by Makie on behalf of the putative Massachusetts class are dismissed without prejudice.

### 2. <u>KCPA</u>

Defendants argue Plaintiffs' KCPA claim fails for lack of privity. (Mot. at 16). The KCPA requires vertical privity. *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992) ("The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act."). Plaintiffs do not dispute that the Thompsons lack privity with Kia, but argue for an exception because the Thompsons are intended beneficiaries of Kia's warranty. (Opp. at 12-13). Plaintiffs cite *Corder v. Ethicon, Inc.*, 473 F. Supp. 3d 749, 768 (E.D. Ky. 2020) and *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013). However, neither case helps Plaintiffs. In fact, *Corder* further supports the Court's dismissal of Plaintiffs' KCPA claims for lack of privity. In *Corder*, the court declined to dismiss the plaintiff's KCPA claim based on lack of privity because the claim was time-barred by the KCPA's statute of limitations. *Id.* at 769. The court held that, if it were to decide the issue, it "would likely side with the evident majority and find lack of privity, as discussed in the warranty context, fatal to the KCPA claim." *Id.* at 769 n.24. Indeed, the "Sixth Circuit and the majority of the federal district courts have also followed suit in holding that privity is required under the KCPA." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 963 (E.D. Ky. 2019) (citing *Yonts v. Easton Tech. Prods.*, Inc., 676 F. App'x 413, 420 (6th Cir. 2017)). In *Simpson*, the court also recognized that *Naiser* is the outlier, which "only a few courts have followed. *Id.* at 962.

This Court joins the majority of courts applying Kentucky law and grants Defendants' motion to dismiss Plaintiffs' KCPA claim for lack of vertical privity with prejudice. *See Brown v. Johnson & Johnson*, No. 3:20-CV-404-DJH-CHL, 2021 WL 869548, at *3 (W.D. Ky. Mar. 4, 2021) (dismissing KCPA claim for lack of privity and refusing to apply an exception).

### 3.   WDTPA

Defendants argue that Plaintiffs' WDTPA claim fails because only affirmative misrepresentations—not omissions or concealments—are actionable under the WDTPA. (Mot. at 16).  The Wisconsin Supreme Court has "made clear that the purpose of § 100.18 is to deter sellers from making false and misleading representations in order to protect the public." *Novell v. Migliaccio*, 2008 WI 44, ¶ 30.  Though Section 100.18 is "extremely broad," Wisconsin courts have placed certain limits on the type of actionable representations that may be remedied under the statute. *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1126 (E.D. Wis. 2016) (quoting *MBS–Certified Pub. Accountants, LLC v. Wisconsin Bell Inc.*, 2013 WI App 14, ¶ 16).  As is relevant here, the Wisconsin Supreme Court held in *Tietsworth v. Harley–Davidson, Inc.*, 2004 WI 32 that "[s]ilence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1)." *Id.* at ¶ 41.  Accordingly, "[t]he WDTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading." *Id*.

Plaintiffs concede they do not allege any affirmative misrepresentations.  (Opp. at 5 n.4 ("Plaintiffs do not allege, and thus concede, any misrepresentation-based fraud claims.")).  Yet Plaintiffs also claim their WDTPA cause of action survives because Defendants' nondisclosure of facts, combined with affirmative representations, is actionable under § 100.18 of the WDTPA. (Opp. at 20 (citing *Murillo*)).  In *Murillo*, unlike here, the "gravamen of the plaintiffs' amended complaint" was that the defendant "*affirmatively* represents false and misleading" advertisements. 197 F. Supp. 3d at 1127 (emphasis in original).  The *Murillo* court therefore allowed the WDTPA claim to proceed.

*Id.*; *see also Christense v. TDS Metrocom LLC*, 316 Wis.2d 356, 763 N.W.2d 248 n.4 (2008) ("[A] nondisclosure of facts, *combined with an affirmative representation* that is undermined by the non-disclosed facts, may result in liability under [the WDTPA]."). Plaintiffs point in conclusory fashion to Defendants' advertising as affirmative representations. (Opp. at 13). However, as is evident by Plaintiffs' explicit concession that they do not allege any affirmative misrepresentations, the gravamen of the Complaint are omission and concealment-based allegations. Therefore, Plaintiffs' WDTPA claim is dismissed with prejudice for failure to allege affirmative misrepresentations. *See Tietsworth*, 677 N.W.2d at 245.

## F.   Standing for Vehicles that Plaintiffs did not Purchase

Lastly, Defendants argue that Plaintiffs lack standing to assert claims based on vehicles that California Plaintiffs did not purchase. (Mot. at 36-38). Plaintiffs contend they have standing to pursue claims on behalf of all Class Vehicle purchasers and lessees because the Class Vehicles are substantially similar. (Opp. at 29-32).

Article III of the U.S. Constitution requires that a plaintiff plead and prove he or she has suffered sufficient injury to satisfy the "case and controversy" requirement. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013) ("One element of the case-or-controversy requirement is that plaintiffs 'must establish that they have standing to sue.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997))). The U.S. Supreme Court has further clarified that standing means a plaintiff must plead and prove (1) injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that this injury is fairly traceable to the challenged action of the defendant; and (3) that this injury is redressable by a favorable ruling from the court. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-150 (2010). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

There is a split in authority among district courts in the Ninth Circuit whether plaintiffs have Article III standing to bring claims for products they did not personally purchase but that were purchased by unnamed class members. *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323, at *5 (C.D. Cal. Oct. 17, 2018) (collecting cases). Some courts have dismissed claims regarding non-purchased products for lack of standing. *See, e.g.*, *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021) (acknowledging split of authority, stating "substantial similarity analysis appears to be inconsistent with the basic concept of standing" and dismissing claims based on non-purchased products); *Missaghi v. Apple, Inc.*, No. CV-13-02003-GAF (AJWx), 2013 WL 12203021, at *8 (C.D. Cal. May 31, 2013) ("Plaintiff could not, as a matter of fact, have suffered injury from a product he never purchased, nor even claims to have seen advertisements concerning."); *Banks v. R.C. Bigelow, In*c., 536 F. Supp. 3d 640, 650 (C.D. Cal. 2021) (denying motion to dismiss for lack of standing where plaintiffs "identified the products which they challenge and plausibly allege that the products are substantially similar" and noting defendants may raise this issue at the class certification stage). The "'prevailing view" in the Ninth Circuit is that class action plaintiffs can bring claims for products they did not purchase 'as long as the products and alleged misrepresentations are substantially similar.'" *Id.* (quoting *In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 WL 5311272, at *7 (C.D. Cal. Sept. 4, 2014)). This Court adopts the "prevailing view" to determine whether Plaintiffs have alleged the Class Vehicles are similar enough to confer Article III standing.

Plaintiffs allege that the Oil Consumption Defect stems from flaws with piston rings, which are designed to prevent engine oil from entering the combustion chamber. (Opp. at 30 (citing Compl. ¶¶ 157, 165)). Plaintiffs allege the "Class Vehicles use the same defective parts, despite the parts being in different engines or different vehicle models." (*Id.*). Plaintiffs cite to *Tappana v. American Honda Motor Co.*, No. CV 21-9046 DSF (PLAx), 2022 WL 2526971, at *3 (C.D. Cal. July 5, 2022). In *Tappana*, the plaintiffs alleged class vehicles all used the same tempered glass sunroofs with the same physical

makeup (i.e., same thin glass with the same manufacturing defects), and they only differ in size.  *Id.*  On the other hand, Defendants cite to *Villanueva v. American Honda Motor Co.*, No. CV 19-1390-MWF (MAAx), 2019 WL 8112467, at \*16 (C.D. Cal. Oct. 10, 2019).  In *Villanueva*, the court rejected plaintiffs' argument that the non-purchased vehicles had the same defect where the plaintiffs did "not specify what models, makes, or years they include in their definition of 'Class Vehicles'" and did not "indicate whether drivers of these other cars have experienced similar problems."  *Id.*

The Court agrees with Defendants and finds the allegations in the Complaint to be more like *Villanueva* than *Tappana*.  When viewed in the light most favorable to Plaintiffs, the Court is unable to discern from the Complaint whether the Class Vehicles all suffer from substantially the same defect just because the engines all have pistons and combustion chambers.  Plaintiffs allege the cars have either Nu, Gamma, Theta, Lambda, or Kappa engines.  (Compl. ¶ 1).  Plaintiffs have not alleged how those engines are substantially similar to each other.  *Lozano v. Bowmar Nutrition LLC*, No. 2:21-CV-04296-MCS-KS, 2021 WL 4459660, at \*3 (C.D. Cal. Aug. 19, 2021) ("Plaintiff merely highlights her allegations that the products share protein fortification in common.  But she states no facts indicating that the products are fortified with a common protein source or other facts indicating those products are substantially similar to the ones she purchased." (internal citation omitted)).  To the contrary, as noted *supra*, Defendants issued a recall regarding an issue that, although it appears facially similar to the Oil Consumption Defect, applies only to the 2.0 Nu MPI Engine.  (*Id.* ¶ 179).  Defendants have not, however, recalled the Class Vehicles.  (*Id.* ¶ 11).  And none of the Plaintiffs purchased a vehicle with a 2.0 Nu MPI Engine.  Plaintiffs have offered no explanation for this discrepancy among the Class Vehicles' engines and whether the Oil Consumption Defect can be expected to be found in each of them.  That Defendants' general oil cleaning TSBs address every model of vehicle made by Defendants is not enough to demonstrate substantial similarity.  Accordingly, the Court finds Plaintiffs have not alleged the Class Vehicles are substantially similar and

therefore grants Defendants' motion to dismiss Plaintiffs' claims based on non-purchased products with leave to amend.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss as follows:

1.    First Cause of Action: dismissed without prejudice;

2.    Second Cause of Action: dismissed without prejudice;

3.    Third Cause of Action: dismissed with prejudice as to Illinois, Florida, Kentucky, and Wisconsin; dismissed without prejudice as to Nevada;

4.    Fourth Cause of Action: dismissed without prejudice;

5.    Fifth Cause of Action: dismissed with prejudice;

6.    Sixth Cause of Action: dismissed without prejudice;

7.    Seventh Cause of Action: dismissed without prejudice;

8.    Eighth Cause of Action: dismissed without prejudice;

9.    Ninth Cause of Action: dismissed without prejudice;

10.   Tenth Cause of Action: dismissed without prejudice;

11.   Eleventh Cause of Action: dismissed without prejudice;

12.   Twelfth Cause of Action: dismissed without prejudice;

13.   Thirteenth Cause of Action: dismissed with prejudice;

14.   Fourteenth Cause of Action: dismissed with prejudice;

15.   Fifteenth Cause of Action: dismissed without prejudice;

16.   Sixteenth Cause of Action: dismissed without prejudice;

17.   Seventeenth Cause of Action: dismissed with prejudice.

//
//
//
//
//

1      Plaintiffs may file an amended complaint to cure the specific deficiencies identified
2 in this Order.  Plaintiffs shall file an amended complaint, if any, within 14 days from the
3 date of this Order.

4

5 **IT IS SO ORDERED.**

6

7 DATED:  October 21, 2022

8                                HON. SHERILYN PEACE GARNETT
9                                UNITED STATES DISTRICT JUDGE